# United States Court of Appeals
## For the First Circuit

No. 14-1110

UNITED STATES OF AMERICA,

Appellee,

v.

SEAN BROWN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

Before

Torruella, Lynch, and Kayatta,
Circuit Judges.

Theodore M. Lothstein and Lothstein Guerriero, PLLC, was on brief, for appellant.
Seth R. Aframe, Assistant United States Attorney, with whom Donald Feith, Acting United States Attorney, was on brief, for appellee.

November 4, 2015

**KAYATTA, Circuit Judge.** Convicted of three counts of distribution of a controlled substance and sentenced to serve 120 months in prison, Sean Brown appeals the denial of his motion for a new trial based on the inadvertent submission of evidence that had previously been ruled inadmissible. Finding no reversible error, we affirm.

## I. Facts and Background

Brown's arrest and conviction were the culmination of an investigation that began when an informant, Douglas Landry, reported to the Nashua, New Hampshire, Police Department that he was buying crack from Brown and that Brown had threatened him because of an outstanding drug debt. Landry agreed to assist the Nashua police by making three controlled drug purchases from Brown. Nashua Police also reported making a series of other controlled purchases of crack from Brown through an undercover officer.

On February 24, 2010, after Landry's last controlled buy from Brown, Nashua police arrested Brown. Federal prosecutors procured a six-count indictment charging Brown with five counts of distribution of crack cocaine arising out of purchases reported by the undercover officer and one count of possession of crack cocaine with intent to distribute based on crack Nashua police reported finding in Brown's hat when they arrested him.

After prosecutors learned of allegations of misconduct by the undercover officer, they dismissed the original indictment

with prejudice.  Prosecutors thereafter filed a new indictment, alleging three counts of distribution of crack cocaine based on the controlled buys by Landry, plus a fourth count again alleging possession of crack cocaine with intent to distribute based on the crack that Nashua police reported finding in Brown's hat as described in the original indictment.  The court dismissed that fourth count with prejudice as duplicative of the same count included in the original indictment that had been dismissed with prejudice.  The court also granted Brown's motion in limine to exclude evidence related to the dismissed count.  After thereafter receiving an exhibit list from the government that included evidence related to the dismissed count, Brown renewed his motion in limine, which the court again granted, this time from the bench on the second day of trial.

At trial, the government based its case on law enforcement's surveillance of Landry's controlled buys with Brown, audio recordings of Brown talking to Landry, and Brown's video-recorded interview with Nashua Sergeant Francis Sullivan after Brown's arrest.  The government presented the testimony of five surveilling officers to describe the procedure used to monitor the controlled buys.  Although they did not see Landry give Brown money, did not see Brown in possession of cocaine, and did not see Brown give cocaine or any other substance to Landry during the three controlled buys, the officers testified that they provided

Landry with cash to make the buys, that they kept him in view throughout the entire buy, and that Landry gave them a quantity of crack cocaine immediately after each transaction. Landry and his vehicle were searched by the police prior to and after the controlled buys to ensure that he did not have any drugs or other contraband on his person, and each time no drugs were found on Landry prior to the buys.

The government admitted and played the audio recordings for the jury. In the recordings, Brown offered to sell Landry "soft" or "hard" and expressed his anger with Landry for being late to their meeting because of "the risk involved." Landry asked Brown for "the hard."[1] Brown also described himself to Landry as a "businessman" and told Landry that he wished the news was "doing an exposé" on "drug dealers . . . and the working man . . . like yourself."

At trial, the government also played a portion of the post-arrest interview in which Brown denied being a drug dealer, but nevertheless admitted that he had traded narcotics for other narcotics, that he believed he was "addicted" to a "hustler" lifestyle in which "drugs . . . guns . . . illegal substances"

---

[1] When asked about the meaning of "hard" and "soft" "in the world of cocaine," Sergeant Sullivan Testified that "soft" refers to powder cocaine and "hard" refers to crack cocaine. See United States v. Albertelli, 687 F.3d 439, 446 (1st Cir. 2012) ("Police officers commonly help interpret conversations by translating jargon common among criminals. . . .").

were the only things "providing for" him, and that, in order to "get by," he "mov[ed]" "[a]nything illegal that you're not supposed to . . . profit from."

In addition to playing portions of the post-arrest interview at trial, the government put into evidence a video recording containing both the short portions played at trial and the lengthier remainder not played at trial. Inadvertently and unbeknownst to either party at the time, the full recording included a short passage referring to drugs found in Brown's hat after his arrest, evidence of which had been excluded based on the order granting Brown's motions in limine. The portion that both parties agree should not have been admitted included the following exchange:

| | |
|---|---|
| Sgt. Sullivan: | Okay and I made contact with you a short time later upon your arrest . . . |
| The Defendant: | No problem. |
| Sgt. Sullivan: | You recall that there was a substance that was removed from you hat? Do you remember this? |
| The Defendant: | I recall a camera . . . I recall your phone . . . I recall saying you had something . . . I recall me asking to see it. |
| Sgt. Sullivan: | Right. |
| The Defendant: | And I remember you showed me what I asked you to see. |

Sgt. Sullivan:    So you are telling me that you didn't have anything in your possession prior to me making contact with you and taking a photograph of what I allegedly found in your hat?

The Defendant:    I am saying to my knowledge I said exactly what happened. I came out. I didn't want to get shot. You know what I'm saying.

                  ***

Sgt. Sullivan:    [The arrest] was fine and you ended up having some stuff on you that is corroborative of the investigation . . . you had product on you . . . this cocaine that was in your hat. I found it and I took a photograph of that . . .

The Defendant:    You actually.

Sgt. Sullivan:    I'm not Houdini.

The Defendant:    Is your phone video capable as well.

Sgt. Sullivan:    I usually take photographs though.

The Defendant.    Oh.

Sgt. Sullivan:    It takes like thirty second videos.

The Defendant:    Yeah like short ones--is I'm talking about.

Sgt. Sullivan:    Right, but I just took a picture of it.

The Defendant:    Wouldn't it have been . . . I mean for the

- 6 -

|  |  | sake of the investigation . . . you know like have the video . . . you know be recording while you're actually doing it so you can say okay well we know this independently corroborative evidence right here. |
| Sgt. Sullivan: | Right. |
| The Defendant: | The video camera don't care if you're black or white. |

During closing arguments, both the prosecutor and Brown himself[2] encouraged the jury to listen to the entire recording of the interview. During their deliberations the jury asked if they could have equipment to hear audio when playing a video.

The jury found Brown guilty of three counts of distribution of a controlled substance (crack cocaine) in violation of 21 U.S.C. § 841(a)(1). Based on the admission of the unredacted video recording, Brown filed a motion for a new trial under Federal Rule of Criminal Procedure 33. The district court denied the motion "essentially for the reasons given in the government's opposition." The district court then sentenced Brown to 120 months in prison.

---

[2] Prior to and during trial, Brown proceeded pro se, with so-called standby counsel in the wings. During deliberations, Brown informed the court that he no longer wished to proceed pro se and the court ordered Brown's standby counsel to represent him from that point forward. He has been represented by counsel since that time.

## II. Analysis

The parties spill much ink in debating the standard of review applicable to this appeal. In substance, what happened is that, by agreement, a videotape was put into the record in normal course, with the mutually-expressed intent that the jurors be able to view the video in its entirety. This is therefore simply not a case in which a jury became privy to extrinsic prejudicial material or information not in the record. See, e.g., United States v. Santana, 175 F.3d 57, 66 (1st Cir. 1999) ("[T]he jury's consideration of extrinsic information raises a presumption of prejudice and the government bears the burden of showing beyond a reasonable doubt that the extrinsic information did not contribute to the conviction." (internal citations omitted)). Rather, it is a case in which a defendant now argues on appeal that evidence should not have been admitted. In normal course, such an appeal would proceed on plain error review where the evidence went in without objection. Arrieta-Agressot v. United States, 3 F.3d 525, 528 (1st Cir. 1993) (applying plain error when no objection was made to the mistake at trial). Here, though, the general substance of the objection was previously raised by Brown and actually accepted by the district court in its in limine orders, with the lack of a subsequent particularized objection to the pertinent portion of the video flowing, perhaps in part, from reliance on an expectation that counsel for the government would comply with that

order. Of course, there is no suggestion here that government counsel did not try to comply. Rather, this is a case of overlapping oversight, and defendant shared in the responsibility of ensuring the exclusion of the inadmissible evidence.

In the end, we need not decide how to frame or gauge our review because, even under the harmless error test advocated by Brown, Brown would lose. Under that test, the government bears the burden of persuasion to show that "it is highly probable that the error did not influence the verdict." United States v. Piper, 298 F.3d 47, 56 (1st Cir. 2002).[3] The evidence against Brown was powerful. Brown's defense reduced itself to suggesting that Landry framed him by supplying the police with his own drugs that he falsely claimed to have received from Brown, a subterfuge made possible, Brown posits, because the police admittedly did not go so far as to search Landry's anus before each of the controlled buys. The problem with this defense (apart from its failure to explain what happened to the cash provided for each buy, how Landry could have afforded to arrive at the buys with drugs, and how Landry extricated and produced the bags to the officers while under

---

[3]    In his brief, Brown applies the "constitutional error" standard which requires the beneficiary of the error to "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Chapman v. California, 386 U.S. 18, 24 (1967)(emphasis added). There is, however, no constitutional issue at stake in Brown's evidentiary challenges to the admission of the full video on the grounds that it is more prejudicial than probative.

constant surveillance without creating suspicion) was Brown's own words as memorialized in his several recorded conversations with Landry and in his jailhouse recorded interview. It is highly unlikely that any reasonable person who listened to the admissible portions of those recordings would have had any doubt that Brown, not Landry, was supplying the drugs.

Conversely, the inadmissible portion of the interview was itself minimally prejudicial. United States v. Dunbar, 553 F.3d 48, 60 (1st Cir. 2009) (finding harmless error when the evidence was minimally prejudicial). This portion of the recording was neither mentioned nor referenced at trial and Brown never explicitly admitted that he had crack cocaine in his hat at any time during trial or during the interview. The inadmissible portion of the interview was brief and ambiguous--there is little context for what is being discussed, the word "cocaine" is used only once by Sullivan, and Brown never admits to whether there was actually anything in his hat. United States v. Wood, 924 F.2d 399, 402 (1st Cir. 1991) (finding harmless error "[i]n light of the other evidence and the ambiguous content" of the evidence). Without additional context for or explanation of this conversation, it is hard to imagine that a "hypothetical average juror," United States v. Boylan, 898 F.2d 230, 262 (1st Cir. 1990) (quoting United States v. Calbas, 821 F.2d 887, 896 (2d Cir.

1987)), would understand or place much weight on this dialogue in reaching his or her verdict.

In short, we find it "highly probable" that the submission of the inadmissible portion of the recording, even if actually viewed and considered by the jury, did not influence the verdict.  See United States v. Tejeda, 974 F.2d 210, 215 (1st Cir. 1992) (upholding defendant's conviction under the non-constitutional harmless error test despite an evidentiary error because it was "highly probable" that it did not influence the verdict in light of other "overwhelming" circumstantial evidence against the defendant).

### III.  Conclusion

Because we conclude that any error in offering and admitting the pertinent portion of the video was harmless, we affirm.