# United States Court of Appeals
## For the First Circuit

No. 15-1318

UNITED STATES OF AMERICA,

Appellee,

v.

ALLISON GONZÁLEZ-MARTÍNEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Kayatta and Barron, Circuit Judges,
and McAuliffe,* District Judge.

John H. Cunha, Jr., with whom Cunha & Holcomb, P.C. was on
brief, for appellant.
Julia M. Meconiates, Assistant United States Attorney, with
whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and
Nelson Pérez-Sosa, Assistant United States Attorney, Chief,
Appellate Division, were on brief, for appellee.

June 9, 2016

_____

* Of the District of New Hampshire, sitting by designation.

**BARRON**, **Circuit Judge**.  Allison González-Martínez was convicted after a jury trial of twenty-two counts of theft of government property and one count of aggravated identity theft. She argues that her convictions must be vacated because the evidence at trial was insufficient to support them and because the District Court abused its discretion in denying her request to continue her trial to a later date.  We affirm.

## I.

We recite the evidence introduced at trial in the light most favorable to the prosecution, as is required when a criminal defendant challenges the sufficiency of the evidence to support her conviction.  See United States v. Pena, 586 F.3d 105, 111 (1st Cir. 2009).

In 2011, the Internal Revenue Service received twenty-two tax returns purporting to be filed by twenty-two individuals. Each return showed that the filer was due a tax refund.  The returns were not what they claimed to be.  They had not in fact been filed by the individuals whose names and security numbers appeared in them.  Nevertheless, the IRS approved tax refund checks for each of the twenty-two tax returns.  Each check was to be paid from the funds of the United States Treasury.

The Treasury checks ranged in value from $6,210.93 to $8,732.69.  Each check was issued to the individual on the corresponding tax return and sent to the address in the continental

- 2 -

United States provided in that return. That address was also typed on the front of each check.

The twenty-two Treasury checks were eventually submitted for deposit into the Banco Popular account of "La Casa de los Motores and Junker Correa," a business in Puerto Rico that sells used automobile parts. The checks were submitted by Junker Correa's owner, González, on twenty-two days from November 2011 to May 2012. The first twenty-one of the checks were deposited into Junker Correa's account; the twenty-second check was held by the bank and not deposited.

Each check was endorsed twice. The first endorsement purported to be the signature of the individual in whose name the check had been issued. The second was an endorsement to Junker Correa.

The individuals in whose names the checks were issued never received the checks, never endorsed the checks, and never spent the checks. Nor had they ever been to Junker Correa.

The jury found González guilty on all counts they were asked to decide: twenty-two counts of theft of government property, all charged in violation of 18 U.S.C. § 641, and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A. Each of the twenty-two counts of theft of government property alleged that González had stolen the value of one of the twenty-two Treasury checks. The aggravated identity theft count was charged

in connection with just one of the twenty-two checks. González appeals.

## II.

We review González's challenge to the sufficiency of the evidence de novo. United States v. Santos-Soto, 799 F.3d 49, 56 (1st Cir. 2015). "[W]e examine the evidence, both direct and circumstantial, in the light most favorable to the prosecution and decide whether that evidence, including all plausible inferences drawn therefrom, would allow a rational factfinder to conclude beyond a reasonable doubt that the defendant committed the charged count or crime." United States v. Salva-Morales, 660 F.3d 72, 74 (1st Cir. 2011) (per curiam) (quoting United States v. Cruz-Díaz, 550 F.3d 169, 172 n.3 (1st Cir. 2008)). And, when we do, we conclude that the evidence was sufficient in this case.

## A.

We begin with the twenty-two counts of theft of government property. Each count corresponds to the submission for deposit by González of one of the Treasury checks.

González does not dispute that there was sufficient evidence from which a reasonable factfinder could conclude that the twenty-two checks were fraudulently obtained from the federal government through the filing of false returns. González also does not dispute that the evidence showed that she submitted the twenty-two checks for deposit into Junker Correa's bank account.

- 4 -

But González does contend that the evidence was not sufficient because it revealed that she, too, was "a victim of the fraudulent scheme," as she simply "deposited checks received by [her] business." And so she contends that the jury could not have found her guilty beyond a reasonable doubt given that, in light of the evidence, it was equally possible that she submitted the checks for deposit on a mistaken understanding of their pedigree as that she submitted them knowing that they were fraudulent.

González is correct that the government needed to prove that she acted with the specific intent to steal a thing of value from the United States, and the government does not argue otherwise. See United States v. Donato-Morales, 382 F.3d 42, 47 (1st Cir. 2004) (holding that although 18 U.S.C. § 641 "does not expressly require specific intent, the Supreme Court has held that Congress, in codifying the common law crimes described in § 641, intended to incorporate the common law requirement of specific intent as an element of the crime" (citing Morissette v. United States, 342 U.S. 246, 270-73 (1952))). And the government put forth no evidence regarding how González came to possess the fraudulent checks. But the government contends that the evidence in the record is still sufficient to support a finding that González acted with the requisite intent, and we agree.

In support of her challenge, González points to the evidence that when Banco Popular began investigating the Treasury

- 5 -

checks, she produced eleven invoices that showed that customers had purchased items from Junker Correa with the checks. González further contends that the invoices were credible because they were "detailed and distinctive." For example, she points to the fact that one invoice stated that the customer had given a $6 tip. And she points to the evidence that shows that she went to Banco Popular when the bank did not accept one of the checks and that she was a willing participant in Banco Popular's investigation of the problem with that check -- "unlikely behavior," she contends, "for someone who knew the check to be fraudulent."

But the question in resolving a challenge to the sufficiency of the evidence is not whether the evidence was such that a juror could have voted to acquit. The question is whether the evidence was such that a reasonable juror could not have found guilt beyond a reasonable doubt. And there are critical holes in González's story that, along with the other evidence, provide sufficient support for what the jury did.

González told the bank that she had an invoice for each of the twenty-two checks and copies of forms of identification -- which she referred to as "IDs" -- for each person who had paid with one of those checks. And yet she did not produce a single ID. González insists that she failed to produce the IDs because her business was "hectic" and her records sloppy, and she argues that the evidence shows as much. But a reasonable juror could

- 6 -

reject that argument and find that she failed to produce the IDs for a different reason, namely that there were no such customers.

Moreover, the invoices that González did produce, while containing the kind of detail one would expect from real invoices (such as the $6 tip), also claimed that some of the customers had used Treasury checks to pay for items that cost significantly less than the value of the checks. In one case, the difference exceeded four thousand dollars. Some of the invoices did claim that customers waited several days to receive the substantial change owed. If so, the customers were apparently trusting Junker Correa to return the large difference and then accepting that difference by cash or check. But Junker Correa's bank account statements did not show cash withdrawals consistent with such large cash refunds. For those reasons, too, a reasonable juror could reject the view that the invoices were real records of past transactions rather than post-hoc inventions of exchanges that never occurred.

To believe that González did not know the checks were fraudulent, a juror would have to believe that Junker Correa, despite never before having received payment from a customer in the form of Treasury check, suddenly, in one seven-month period, received an inundation of twenty-two such payments. A juror would also have to believe the customers chose this unusual form of payment even though it required them to trust González to refund them thousands of dollars at some future point in time. And a

juror would also have to believe that it just happened to be the case that at the same time that customers began paying with those checks, González decided to begin transferring large sums of money from the Junker Correa account to her personal account -- something that she had done on very few occasions in the several years before the Treasury checks appeared.[1]

To state what the jury would be required to believe is to state the reason that a jury reasonably could have believed the government's account of what must have transpired rather than González's own. Lending additional support to the government's account is the fact that although Banco Popular does not permit double-endorsed checks to be deposited into personal accounts, such checks may be deposited in commercial accounts. As the Junker Correa account was a commercial account, the government presented the jurors with a reasonable alternative explanation to the one González offers as to why she submitted the checks for deposit into the Junker Correa account.

"Jurors . . . are not expected to resist commonsense inferences on the realities of human experience." See United

---

[1] On three occasions in December 2011, for example, González transferred $1,700, $2,500, and $4,000 to her personal account. She made approximately twenty-five transfers in the first half of 2012, most of which exceeded $1,000. By comparison, over the course of the previous three years, González transferred money to her personal account on just several occasions, and the transfers ranged from $300 to $1,000.

States v. Saccoccia, 58 F.3d 754, 782 (1st Cir. 1995).  A rational juror could have rejected González's story and concluded beyond a reasonable doubt that González, in submitting the checks for deposit, was knowingly stealing from the government.  Accordingly, González's challenge to the sufficiency of the evidence on the first twenty-two counts fails.

**B.**

González also challenges her conviction for aggravated identity theft.  The identity theft statute, 18 U.S.C. § 1028A, provides that someone who "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person," "during and in relation to" various specified felonies, including theft of government property in violation of § 641, "shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years."  18 U.S.C. § 1028A(1).

González appears to understand the "means of identification of another person" at issue in this case to be the signature endorsement on one of the twenty-two Treasury checks. The government does not argue otherwise, and so we proceed on that understanding as well.

González does not contest that the signature on that check was transferred, possessed, or used "without lawful authority" -- that is, that it was forged.  Nor does González

contest that she "transfer[red], possess[ed], or use[d]" that signature when she submitted the endorsed check for deposit into the Junker Correa bank account.  Rather, she argues that there was insufficient evidence that she did so "knowingly" -- that is, with the knowledge that the signature was forged.

But for the reasons already given, a reasonable juror could conclude beyond a reasonable doubt that González did not receive the Treasury checks in exchange for actual sales at Junker Correa.  From this conclusion, a reasonable juror could further infer that González knew that the checks had not been signed by the people in whose names they were issued.[2]

### III.

González next argues that her convictions should be vacated because the District Court erred when it denied her two requests -- one made three days before trial and the second on the morning of trial -- to continue her trial to a later date. González's request was made pursuant to a provision of the Speedy Trial Act that permits a trial court to grant a continuance where "the ends of justice served by taking such action outweigh the

---

[2] González also argues that the forfeiture count should be vacated because the evidence was insufficient to support her convictions on the other counts.  Because we have concluded that the evidence was sufficient to support her convictions, that argument fails as well.

best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A).

We review a trial court's denial of a request for a continuance under that provision of the Speedy Trial Act for an abuse of discretion. United States v. Williams, 630 F.3d 44, 48 (1st Cir. 2010). Under that standard, "we will not disturb such a decision if reasonable minds could disagree about the proper ruling." United States v. Delgado-Marrero, 744 F.3d 167, 195 (1st Cir. 2014).

We evaluate each case "on its own facts," Williams, 630 F.3d at 48, based on considerations that "include 'the reasons contemporaneously presented in support of the request, the amount of time needed for effective preparation, the complexity of the case, the extent of inconvenience to others if a continuance is granted, and the likelihood of injustice or unfair prejudice attributable to the denial of a continuance.'" Id. (quoting United States v. Rodríguez-Durán, 507 F.3d 749, 763 (1st Cir. 2007)). And we will "overturn[] the denial of a continuance only when the movant identifies specific, concrete ways in which the denial resulted in 'substantial prejudice' to his or her defense." Delgado-Marrero, 744 F.3d at 196.

González argues that the District Court abused its discretion in denying her requests to continue trial to a later date due to the issuance of the superseding indictment in this

- 11 -

case only ten days before trial, and due to her retaining a new attorney -- Luis Rafael Rivera -- to represent her just three days before trial.  But we do not agree.

We do not see the basis for concluding González suffered prejudice by having to appear for trial with an attorney who had just signed on to represent her.  The District Court instructed González that the court would allow Rivera to appear as counsel only if Rivera were "ready for trial as scheduled" -- an order González does not challenge as itself an abuse of discretion. Thus, by appearing for trial, Rivera represented to the District Court that he was prepared.[3]  Moreover, although Rivera tried the case as lead counsel, he had by his side González's two other attorneys, each of whom had been on the case since its inception. See Delgado-Marrero, 744 F.3d at 196 (listing "other available assistance" to the movant as a factor to be considered in determining whether a district court abused its discretion in denying a motion for a continuance).

We also do not see a basis for concluding that González was prejudiced by having to go to trial soon after the superseding indictment was issued.  González is right that the new indictment set forth eighteen additional counts of theft of government

---

[3] González does not argue to us that counsel was ineffective. But she does "reserve her right" to raise that argument in a 28 U.S.C. § 2255 petition.

property, each corresponding to a different Treasury check, as well as the one count of aggravated identity theft. But González agreed to the trial date in this case over a month and a half before trial. When she agreed to that date, moreover, she knew that a superseding indictment was forthcoming. González also does not challenge the District Court's finding below that over a month before trial she was in possession of all the discovery materials relevant to the new counts in the superseding indictment.

We recognize that González argues that, despite having those materials, and despite knowing that a superseding indictment was forthcoming, she was unprepared to go to trial because she had expected only fifteen new counts of theft of government property -- as opposed to eighteen new counts -- and because she had not expected to be charged with aggravated identity theft. One can certainly see the potential need for more time to prepare when faced with a wholly new count. But González must "identify specific ways in which the court's erroneous denial of a continuance prejudiced . . . her defense." United States v. Rodriguez-Marrero, 390 F.3d 1, 22 (1st Cir. 2004); see also Rodríguez-Durán, 507 F.3d at 763 ("Identifying prejudice from the [denial of a request for a continuance] is essential."). She does not, however, point to particular materials she would have more carefully reviewed, witnesses or evidence she would have investigated, or a strategy she would have pursued had she had

- 13 -

more time to prepare.  Because she has not identified any concrete respect in which she was harmed by the denial of her request for a continuance, her challenge fails.  See Rodríguez-Durán, 507 F.3d at 765 (finding no abuse of discretion in denial of a continuance where the defendants "pointed to no pivotal evidence or theories that realistically could have made a difference had they been allotted more time to prepare for trial").

## IV.

Having found no reversible error, we **affirm**.