# United States Court of Appeals
## For the First Circuit

No. 15-2400

UNITED STATES OF AMERICA,

Appellee,

v.

PETER APICELLI,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

Before

Torruella, Selya, and Thompson,
Circuit Judges.

Sven D. Wiberg, with whom Wiberg Law Office, PLLC was on brief, for appellant.
Seth R. Aframe, Assistant United States Attorney, with whom Emily Gray Rice, United States Attorney, was on brief, for appellee.

October 7, 2016

**TORRUELLA**, **Circuit Judge**.  Peter Apicelli was convicted of one count of manufacturing marijuana in violation of 21 U.S.C. § 841(a)(1) following a jury trial in the United States District Court for the District of New Hampshire.  On appeal, Apicelli argues that the Government presented insufficient evidence to prove that the marijuana found by the police belonged to him and raises several procedural challenges.  Unpersuaded by his arguments, we affirm.

## I.  Background

In September 2013, New Hampshire law enforcement officials received information from a Campton town employee named Robert Bain about a potential marijuana grow near Chandler Hill Road and Mason Road.  On September 5, state police officers met with Bain near Chandler Hill Road to locate the marijuana plants.  The area by Chandler Hill Road and Mason Road was heavily wooded.  The officers searched the woods for about an hour before finding two clusters of marijuana plants growing at the edge of the wooded area -- about 200-300 meters from the residence at 201 Mason Road.  The next day, the officers went back to the grow site and set up a motion-activated video camera.  On September 16, the officers checked the camera and viewed footage showing an individual with a red backpack and tan shorts tending the marijuana plants.  Through further investigation, the officers concluded that

Apicelli was renting the 201 Mason Road residence and that two cars parked in front were registered in Apicelli's name.

Based on this evidence, the officers obtained a warrant to search the house at 201 Mason Road and arrest Apicelli. On September 17, the officers executed the search warrant. Inside the residence, the officers found additional marijuana plants, marijuana drying, and packaged marijuana as well as a red backpack and tan shorts. Apicelli was not present during the search or arrested.

Apicelli was subsequently charged with and convicted of one count of manufacturing marijuana in violation of 21 U.S.C. § 841(a)(1) and sentenced to 12 months and one day of imprisonment.

## II. Sufficiency of the Evidence

On appeal, Apicelli argues that the evidence the Government presented at his trial was insufficient to prove either that the marijuana found growing in the woods near the 201 Mason Road property or inside the house belonged to him. "We review challenges to the sufficiency of the evidence de novo, 'considering all the evidence, direct and circumstantial, in the light most favorable to the prosecution, drawing all reasonable inferences consistent with the verdict, and avoiding credibility judgments, to determine whether a rational jury could have found the defendant[] guilty beyond a reasonable doubt.'" United States v.

Negrón-Sostre, 790 F.3d 295, 307 (1st Cir. 2015) (quoting United States v. Agosto-Vega, 617 F.3d 541, 548 (1st Cir. 2010)).

Given that no marijuana was ever found on Apicelli's person, the Government relied upon the doctrine of constructive possession to link Apicelli to the marijuana found at 201 Mason Road. "Constructive possession exists when a person knowingly has the power and intention at a given time to exercise dominion and control over an object either directly or through others." United States v. García-Carrasquillo, 483 F.3d 124, 130 (1st Cir. 2007) (quoting United States v. McLean, 409 F.3d 492, 501 (1st Cir. 2005)). Nothing prohibits the government from "rely[ing] entirely on circumstantial evidence to show constructive possession." Id.

We conclude that the Government's circumstantial evidence was strong enough for a rational jury to conclude beyond a reasonable doubt that the marijuana found in the wooded area and inside the 201 Mason Road residence belonged to Apicelli. First, the Government's evidence led to the reasonable inference that Apicelli lived at 201 Mason Road. In addition to the cars registered in Apicelli's name observed during the officers' surveillance, the search revealed mail addressed to Apicelli and a debit card bearing Apicelli's name.

Second, the record also supports the reasonable inference that Apicelli was the only person who lived at 201 Mason

-4-

Road. The officers did not see any cars parked in front of 201 Mason Road during their investigation besides the two registered to Apicelli. Apicelli's landlord, Rene Dubois, testified that the lease required Apicelli to notify him if any other person lived at the residence for an extended period of time and he received no such notice. Finally, one of the investigating officers, Sergeant Patrick Payer testified that only one person appeared to live in the house. Although Payer acknowledged the residence had two bedrooms, he stated the second bedroom appeared to belong to a child and "did not look lived in." Based on this evidence, a rational jury could infer that Apicelli was the only person who lived at 201 Mason Road at the time the officers found the marijuana plants and therefore the plants belonged to him.

Finally, the Government presented evidence linking whoever lived at 201 Mason Road to the marijuana grow at the edge of the woods. In addition to the plants' proximity to the property, the officers found a red backpack and tan shorts like those seen on the surveillance footage inside 201 Mason Road. Notably, the tan shorts were found in the only bedroom in the residence that appeared to belong to an adult. Putting two and two together, a rational jury could conclude that because the clothing seen on the footage was found inside 201 Mason Road and

Apicelli was the home's only resident, Apicelli was the person seen on the surveillance footage.

Apicelli takes issue with the fact that none of the Government's witnesses identified him as the individual in the surveillance video tending to the plants. Without a positive identification, Apicelli argues that the Government's evidence that he lived at 201 Mason Road is insufficient because someone else could have lived there during the relevant time frame. As stated above, however, a rational fact finder could conclude that Apicelli was the only resident at 201 Mason Road during the relevant time frame. Moreover, we do not "demand that the government disprove every hypothesis consistent with the defendant's innocence." United States v. Spinney, 65 F.3d 231, 234 (1st Cir. 1995). Apicelli's argument that the Government failed to completely rule out the possibility that the marijuana belonged to an unnamed visitor to 201 Mason Road turns sufficiency review on its head. "[W]hen this Court reviews a jury verdict for sufficiency of evidence, 'it matters not whether [the defendant] can raise a plausible theory of innocence: if the record as a whole justifies a judgment of conviction, it need not rule out other hypotheses more congenial to a finding of innocence.'" United States v. Valerio, 676 F.3d 237, 245 (1st Cir. 2012) (quoting United States v. Manor, 633 F.3d 11, 14 (1st Cir. 2011)). The

-6-

record supports the conclusion that the marijuana belonged to Apicelli; thus our inquiry ends.

### III. Suppression Rulings

We now turn to Apicelli's various procedural claims, starting with his argument that the district court committed error by denying his suppression motion without an evidentiary hearing. Before the district court, Apicelli claimed that Sergeant Patrick Payer intentionally or recklessly included material misrepresentations and omitted material information from his search warrant affidavit. All of Apicelli's arguments related to information concerning Bain, the road agent who had alerted the police to the marijuana grow, and his credibility.

In his affidavit, Payer recounted that he had received a tip about a marijuana grow, visited the area, found marijuana plants, and set up a motion-activated video camera to watch the grow. Payer also stated that he believed Apicelli was renting the house at 201 Mason Road, that he had identified two cars registered to Apicelli at the house, and that Apicelli fit the profile of the person seen tending the plants on the surveillance video -- a man with dark hair between the ages of twenty-five and thirty. Additionally, Payer stated that he asked someone to review the

surveillance footage and that the person subsequently identified Apicelli as the man tending the plants.[1]

Apicelli argued in his motion to suppress that Bain's initial tip to the police as well as his subsequent identification of Apicelli on the surveillance video were not credible because Bain had motive to lie due to a personal dispute. According to Apicelli, he had caught Bain entering the wooded area near 201 Mason Road to hunt and told Bain that he was trespassing. Apicelli's landlord, Rene Dubois, subsequently prepared a "Land Use Conditions" document prohibiting Bain from entering the wooded area without permission. Apicelli claimed that Payer misrepresented Bain as merely a "concerned citizen" who was friends with Dubois and that Bain's motive to retaliate against Apicelli was a material omission. Apicelli also argued that the affidavit should have mentioned that Bain, as a road agent, was a town employee, and had previously worked with the police on other cases. Finally, Apicelli contended that Bain's identification was not credible because the video was too low-resolution for anyone to tell who was on camera.

---

[1] In the version of Sergeant Payer's affidavit made publicly available, the name of the person asked to review the tape was redacted, but discovery subsequently revealed that this person was Bain.

In order to be entitled to an evidentiary hearing, a defendant must make a substantial preliminary showing that a false statement (or omission) was (1) "knowingly and intentionally, or with reckless disregard for the truth . . . included by the affiant in the warrant affidavit," and (2) "necessary to the finding of probable cause." Franks v. Delaware, 438 U.S. 154, 155-56 (1978); see also United States v. Hadfield, 918 F.2d 987, 992 (1st Cir. 1990). The district court rejected Apicelli's arguments on this second prong, concluding that Bain's tip and identification were not the sole basis for finding probable cause. "A district court's finding that the requisite showing for a Franks hearing has not been made will be overturned only if it is clearly erroneous." United States v. Cartagena, 593 F.3d 104, 112 (1st Cir. 2010).

Simply put, the information concerning Bain was not necessary to the finding of probable cause, thus rendering any issues with his credibility moot. As stated in Payer's affidavit, he and the other officers found a marijuana grow near 201 Mason Road.[2] Independent of Bain's identification, the police linked

---

[2] In his reply brief, Apicelli also alludes to the search of the wooded area as falling outside the open fields exception to the Fourth Amendment. See Florida v. Jardines, 133 S. Ct. 1409, 1414 (2013). "We have held, with a regularity bordering on the monotonous, that issues advanced for the first time in an appellant's reply brief are deemed waived." United States v. Parigian, 824 F.3d 5, 13 (1st Cir. 2016) (quoting Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 299 (1st Cir. 2000)). We also express doubt that an unenclosed wooded area 200-300 yards

Apicelli to the 201 Mason Road residence through their own investigation. Apicelli's rental of 201 Mason Road, Apicelli's two cars parked in front of the residence, and Payer's statement that Apicelli fit the profile of the person seen on the surveillance video would allow a reasonable magistrate to conclude that there was a "fair probability that contraband or evidence of a crime [would] be found in" the residence at 201 Mason Road. United States v. Rigaud, 684 F.3d 169, 173 (1st Cir. 2012) (quoting United States v. Hicks, 575 F.3d 130, 136 (1st Cir. 2009)).[3] We therefore affirm the district court's denial of Apicelli's motion to suppress.

---

away from the house at 201 Mason Road would be considered curtilage. See United States v. Brown, 510 F.3d 57, 65 (1st Cir. 2007) (listing "[1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing by" as factors in determining whether a location falls within a home's curtilage (alterations in original) (quoting United States v. Diehl, 276 F.3d 32, 38 (1st Cir. 2002)).

[3] Apicelli attempts to refute this conclusion by citing our case law requiring warrant affidavits to include information allowing magistrates to assess the credibility of confidential informants. See, e.g., United States v. Greenburg, 410 F.3d 63, 66-67 (1st Cir. 2005). Apicelli's reliance on these cases, however, is misplaced given that Bain was not unnamed in the affidavit as presented to the magistrate.

## IV. <u>Speedy Trial</u>

Apicelli next contends that the Government violated his right to a speedy trial under the Speedy Trial Act ("STA"), 18 U.S.C. §§ 3161-74, and the Sixth Amendment. Neither of these claims have merit.

## A. Speedy Trial Act

"The STA requires that a defendant be tried within seventy days of the later of the indictment or initial appearance." <u>United States</u> v. <u>Ibrahim</u>, 814 F.3d 30, 32 (1st Cir. 2016) (citing 18 U.S.C. § 3161(c)(1)). "If a criminal defendant is not brought to trial within the seventy-day time limit . . . the penalty provisions of the STA mandate that 'the information or indictment shall be dismissed on motion of the defendant.'" <u>United States</u> v. <u>Santiago-Becerril</u>, 130 F.3d 11, 15 (1st Cir. 1997) (quoting 18 U.S.C. § 3162(a)(2)). In calculating the seventy-day period, certain delays are excluded, including delays caused by continuances when the district court judge determines that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). We review STA claims "de novo as to legal rulings, and for clear error as to factual findings." <u>Ibrahim</u>, 814 F.3d at 32 (quoting <u>United States</u> v. <u>Carpenter</u>, 781 F.3d 599, 616 (1st Cir. 2015)). "Overall, however, we review for abuse of

discretion decisions to exclude intervals of time from the STA count," United States v. Souza, 749 F.3d 74, 79 (1st Cir. 2014), including "ends of justice" determinations, United States v. González-Martínez, 825 F.3d 51, 57 (1st Cir. 2016).

Apicelli's STA clock began running on March 1, 2014, the day after his arraignment. The parties do not dispute that forty-six countable days elapsed between this date and April 16, 2014, when Apicelli first moved to continue trial for sixty days. Apicelli does not contest that the period from April 16, 2014 to February 12, 2015 was all excludable time due to various continuance motions relating to plea negotiations and his counsel's schedule.

Apicelli and the Government diverge as to whether the STA clock continued to stand still during the following two periods in which the district court granted ends-of-justice continuances: February 12, 2015 to March 25, 2015, and June 8, 2015[4] to July 21, 2015. Counting either period would push Apicelli's STA clock to nearly ninety days, after accounting for the uncontested forty-six days that had previously elapsed.[5] The district court issued

---

[4] Apicelli lists June 2, 2015 as the start date of nonexcludable time. This date corresponds with the parties' jury selection. Apicelli does not explain in his brief how this date fits with his claim that the district court's ends-of-justice continuance entered on June 8 was improper.

[5] Forty-two days elapsed between February 12, 2015 and March 25,

-12-

the continuances in response to motions Apicelli filed on February 7, 2015 and June 7, 2015.

Normally, a court may issue an ends-of-justice continuance "at the request of the defendant or his counsel." 18 U.S.C. § 3161(h)(7)(A). Apicelli, however, contends that his case fits into the exception we described in United States v. Hastings, 847 F.2d 920 (1st Cir. 1988). In Hastings, we acknowledged that "[a] defendant denied automatic discovery . . . would be placed snugly between a rock and a hard place: he could either forgo discovery to which he was entitled or he could file a motion to obtain it, thus stopping the speedy trial clock and easing the pressure on the government to bring him to trial." 847 F.2d at 923. Apicelli seizes upon this language and argues that the Government withheld discovery to which he was entitled and

---

2015. Forty-four days elapsed between June 8, 2015 and July 21, 2015. Apicelli also argues that ends-of-justice continuances are only excludable if they are thirty days or less. This is incorrect. Apicelli appears to be referring to the STA requirement that a district court decide a motion submitted on its papers within thirty days of the last submission. See 18 U.S.C. § 3161(h)(1)(H); Henderson v. United States, 476 U.S. 321, 329-30 (1986). We have not read a specific deadline into ends-of-justice continuances. Instead, the district court must "set[] forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice [are] served." 18 U.S.C. § 3161(h)(7)(A).

-13-

therefore the time needed to resolve his motions should not have been excluded from the STA clock.[6]

Apicelli's argument ignores Hasting's nuance.  In that case, we laid out a framework for analyzing when dismissal with prejudice pursuant to the STA could be appropriate based on differing degrees of culpability on the part of the Government. Id. at 925.

> [D]elay which results either from intentional noncompliance with the Act or from actions designed to gain unfair prosecutorial advantage weighs heavily in favor of dismissal with prejudice.
>   Closely allied to such examples, but perhaps once removed, are recurrent shortcomings.  If delay is occasioned by a pattern of governmental inattention or because the prosecutor . . . fails to learn oft-repeated lessons, the situation becomes more conducive to dismissal with prejudice than if delay stems from some solitary bevue. . . .  Random negligence . . . weighs less heavily in favor of banning reprosecution.

Id. (citations omitted).  We also cautioned against imputing bad faith to the Government because Congress did not intend for the STA to serve as "an all-encompassing code of ethical conduct for prosecutors."  Id. at 927.

---

[6]  We decline to address whether any additional time for the period from March 26, 2015 to June 7, 2015 was excludable because Apicelli fails to specifically contest it in his opening brief.  The district court concluded all but April 1 to April 8 (seven days) did not count towards the STA clock.

On appeal, Apicelli never alleges that the Government acted intentionally or delayed its discovery production to gain an unfair advantage. Rather, he simply lists evidence he believes the Government should have disclosed at an earlier date and asks us to infer bad faith or government inattention from the delays themselves. For example, with respect to the February 12, 2015 continuance, Apicelli claims he had not received the "vast majority of the discovery" before the filing of his February 7 motion. Apicelli, however, neither explains why this evidence should have been part of the Government's automatic discovery obligations nor does he appeal the district court's finding that the Government was in compliance.[7] We have long held that "issues adverted to in

---

[7] Apicelli claimed in his February 7 motion and at the subsequent hearing that the Government had failed to produce (1) the dispatch records and log notes relating to the investigation of his property; (2) the "bench file" from the laboratory that tested the marijuana found on the 201 Mason Road property; (3) additional information about the conflict of interest that resulted in the transfer of his case from state to federal court. Apicelli also alleged that the Government delayed turning over a laboratory report and the surveillance video of the person in the tan shorts and red backpack tending the marijuana plants. With respect to each, the district court concluded that the Government had a reasonable explanation for the delay or that Apicelli was wrong that the Government had not turned over all of the evidence it had.

In his appellate brief, Apicelli lists other evidence he believes the Government withheld that were not subject to the February 7 motion, but fails to provide any citations to the motions or orders concerning them. As a result, we find ourselves at sea discerning the merits of these claims or even the STA periods they would exclude.

a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Without any reason to doubt the district court's findings that the Government had complied with its discovery obligations, we cannot find an STA violation from the delays themselves. Thus, our review of the district court's continuances is only for whether "reasonable minds could disagree about the proper ruling." González-Martínez, 825 F.3d at 57 (quoting United States v. Delgado-Marrero, 744 F.3d 167, 195 (1st Cir. 2014)).

The district court could reasonably conclude that the ends of justice outweighed Apicelli's speedy trial right in granting a continuance to resolve his February 7 motion. As the court explained, a continuance was necessary because the Government's deadline for responding was after Apicelli's trial date. The district court also stated it foresaw needing to hold an evidentiary hearing and issue subpoenas in order to rule upon the motion. Given this context, we do not believe the district court abused its discretion in excluding this period from the STA clock.[8]

---

[8] We also uphold the district court's conclusion that this period was also properly excluded as time needed to resolve a pretrial motion pursuant to 18 U.S.C. § 3161(h)(1)(D).

Similarly, the district court could reasonably exclude the period from June 8 through July 21 from its STA calculations. Apicelli contends that the Government necessitated this motion because it waited until June to turn over four DVDs containing four to six hours of additional video footage caught by the surveillance camera set up near the marijuana grow. Again, however, Apicelli fails to explain the significance of this footage or why the Government was obligated to turn it over sooner.[9] Without any guidance from Apicelli or a direct challenge to the district court's discovery rulings, we must view the Government as in compliance with its discovery obligations. The district court's explanation for the continuance is otherwise reasonable. Apicelli requested the continuances in order to review the new

---

[9] The DVDs contained the "false trigger" footage -- i.e., footage in which the motion-activated camera was triggered by something other than the person tending the marijuana plants, be it animals, law enforcement officials setting up the camera, or wind. The Government had previously only given Apicelli the footage showing the person tending the marijuana plants, and stated the false trigger footage was not disclosed earlier because it did not believe the footage was relevant.

Apicelli does not explain the significance of the false trigger footage in his briefing. Instead, he simply claims that the district court did not accept the Government's initial representation that the tapes had no evidentiary value. This characterization is incorrect. The district court initially declined to take the Government at its word that the footage was not relevant -- thus finding a continuance necessary -- but ultimately concluded that it had complied with its discovery obligations.

evidence and potentially prepare new exhibits.  It is evident that the district court granted Apicelli's motion in order to give his counsel time to prepare.  See 18 U.S.C. § 3161(h)(7)(B)(iv) (stating a district court should take into account whether failure to grant continuances would "deny counsel for the defendant . . . the reasonable time necessary for effective preparation").  We therefore find no abuse of discretion in its issuance of an ends-of-justice continuance.

Finding that both timeframes Apicelli contests are excludable, we affirm the district court's determination that no STA violation occurred.

**B.  Sixth Amendment**

The STA does not act as a bar to speedy trial claims under the Sixth Amendment.  See 18 U.S.C. § 3173.  Nonetheless, it would be an "unusual case" in which a Sixth Amendment but not a STA violation exists.  United States v. Muñoz-Amado, 182 F.3d 57, 61 (1st Cir. 1999) (quoting United States v. Mitchell, 723 F.2d 1040, 1049 (1st Cir. 1983)).

"To determine whether a [Sixth Amendment speedy trial] violation has occurred, we use the four-part balancing test established in Barker v. Wingo, [407 U.S. 514 (1972)], which requires a weighing of: (1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of his right,

and (4) prejudice to the defendant resulting from the delay." United States v. Dowdell, 595 F.3d 50, 60 (1st Cir. 2010) (citing Barker, 407 U.S. at 530). We ordinarily review Sixth Amendment speedy trial determinations for abuse of discretion. Souza, 749 F.3d at 81.

We start with the length of the delay. "The Sixth Amendment right to a speedy trial attaches upon formal accusation. In the typical case, this means either arrest or indictment, whichever comes first." Dowdell, 595 F.3d at 61 (citations omitted). Apicelli's trial did not commence until July 21, 2015 -- a time period of almost eighteen months. Where the time differential between a criminal defendant's indictment and trial is greater than one year, this court will make additional inquiry. Muñoz-Amado, 182 F.3d at 61.[10]

---

[10] On appeal, Apicelli contends that the district court should have used the date of his state arrest to calculate the length of his speedy trial delay. State authorities in New Hampshire arrested Apicelli on November 20, 2013, sixty-three days before his federal indictment on January 22, 2014. This argument is without merit. Normally, "an arrest or indictment by one sovereign would not cause the speedy trial guarantees to become engaged as to possible subsequent indictments by another sovereign." Dowdell, 595 F.3d at 61 (quoting United States v. MacDonald, 456 U.S. 1, 10 n.11 (1982)).

Apicelli claims that he can overcome the dual sovereign presumption because he showed that the state prosecution was "merely a tool of the federal authorities." Bartkus v. Illinois, 359 U.S. 121, 123 (1959). Apicelli, however, only cites the similarity between his state and federal charges -- i.e., that they were both prosecutions for drug offenses. Mere similarity

Nonetheless, we agree with the district court that the reasons for the delay weigh against finding a speedy trial violation. Apicelli does not dispute that delays arising between April 2014 and November 2014 -- a seven-month period -- are attributable to his counsel filing motions relating to plea negotiations and personal reasons. As stated above, we do not believe Apicelli's claim that his discovery-related motions should be attributed to the Government. The resolution of Apicelli's discovery claims spanned most of the time period from December 2014 to July 2015. Finally, we note that between May and the end of July of 2015, Apicelli filed at least three motions for reconsideration reiterating the same arguments. Based on this record, the reasons for the delay are mostly, if not entirely, attributable to Apicelli.

Turning to the third factor, we acknowledge that Apicelli repeatedly asserted his speedy trial right through motions to dismiss. However, "[c]ourts look with some skepticism at assertions of speedy trial rights made by defendants who

---

is not sufficient -- a defendant must make a prima facie case that "one sovereign was a pawn of the other, with the result that [the] notion of two supposedly independent prosecutions is merely a sham." Dowdell, 595 F.3d at 63 (quoting United States v. Guzmán, 85 F.3d 823, 827 (1st Cir. 1996)). Because Apicelli has failed to make such an allegation, any preceding state proceedings do not count towards his speedy trial claim.

contribute to the delay, . . . [a]nd like the other factors, assertion of the right is not in itself decisive." United States v. Carpenter, 781 F.3d 599, 614 (1st Cir. 2015).

Finally, we address the prejudice prong. "The prejudice prong seeks to protect three interests: avoidance of oppressive pretrial incarceration, minimizing anxiety and concern, and limiting the possibility that the defense will be impaired." Id. Apicelli does not allege any of these interests were implicated by the delay in his case. Apicelli was not subject to pretrial incarceration and he does not claim he suffered anxiety from the pending proceedings. He states the Government unduly withheld discovery, but he does not explain how his preparation for trial was impaired in light of the district court's continuances. Given that Apicelli was largely responsible for the delay and he has failed to allege prejudice, we believe the district court did not abuse its discretion in denying Apicelli's Sixth Amendment speedy trial claim.

## V.  Motions for Mistrial

Finally, Apicelli argues that two of the police officers who testified for the Government made improper statements that entitled him to a mistrial. "Because 'whether to declare a mistrial speaks to the informed discretion of the district court,' we review this decision for abuse of that discretion only." United

States v. Díaz, 494 F.3d 221, 226 (1st Cir. 2007) (quoting United States v. Keene, 287 F.3d 229, 233 (1st Cir. 2002)).

"Declaring a mistrial is a last resort, only to be implemented if the taint is ineradicable, that is, only if the trial judge believes that the jury's exposure to the evidence is likely to prove beyond realistic hope of repair." United States v. Trinidad-Acosta, 773 F.3d 298, 306 (1st Cir. 2014) (quoting Díaz, 494 F.3d at 227). In making this determination, we look at the totality of the circumstances, considering in particular the following three factors: "1) whether an appropriate curative instruction was issued, 2) whether the judicial response was timely, and 3) whether appellants successfully rebutted the presumption that the jury followed the judge's instructions." United States v. Pagán-Ferrer, 736 F.3d 573, 586 (1st Cir. 2013). When "a curative instruction is promptly given, a mistrial is warranted only in rare circumstances implying extreme prejudice." United States v. Torres, 162 F.3d 6, 12 (1st Cir. 1998). As discussed in more detail below, the district court promptly issued curative instructions rendering a mistrial unnecessary.

## A. Hearsay Evidence Argument

Apicelli first contends that a mistrial was warranted because Payer testified that Bain (who was not a witness at Apicelli's trial) had identified Apicelli as the person on the

surveillance video.  Apicelli argues that the jury could infer this from the following exchange between Payer and the prosecutor:

> Q.   After recovering this video, what, if any investigative steps did you take next?
>
> A.   To get the person in the video identified.
>
> Q.   And did you speak to anyone in order -- as part of that process?
>
> A.   Yes.
>
> Q.   And who did you speak with?
>
> A.   Robert Bain.
>
> Q.   And after speaking with Mr. Bain, what did you do next?

Immediately following this exchange, Apicelli moved for a mistrial on the ground that the Government was attempting "an end run around the hearsay rule" and introduce Bain's out-of-court identification of Apicelli as the person in the surveillance video.[11]  The district court denied the motion and instead instructed the jury "to disregard the last question and answer, and . . . not to draw any inference that this witness identified the defendant from these videos."  At Apicelli's request, the district court further

---

[11]   "Fed. R. Evid. 801(c) defines hearsay generally as 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'"  Vázquez v. López-Rosario, 134 F.3d 28, 33-34 (1st Cir. 1998).

instructed the jury "not to draw any inference from the last question and answer that an identification was made by anybody from these videos."

We find no abuse of discretion in connection with the district court's course of action. The district court's prompt curative instructions addressed the very concern Apicelli raised -- that the jury would infer that Bain identified Apicelli on the video and use this statement for its truth. We do not believe Payer's remark created the type of extreme prejudice that would overcome our presumption that juries follow curative instructions. Generally speaking, inadmissible evidence that is "brief and ambiguous" is only minimally prejudicial. See United States v. Brown, 805 F.3d 13, 17 (1st Cir. 2015) (concluding jury would not place much weight on improper playing of tape in which officer questioned defendant about cocaine found in his hat when there was little context for the conversation's meaning). Payer never explicitly stated that Bain identified Apicelli as the person on the surveillance video. Rather, Payer testified only that he had Bain identify the person on the surveillance tape and after that he applied for a search warrant of 201 Mason Road. Although a jury could draw the inference that Payer applied for the warrant in part because Bain identified Apicelli as the person on the

surveillance video, this conclusion was by no means obvious or the only interpretation of Payer's remarks.[12]

Apicelli contends that reversal is necessary because the district court based its decision on the premise that the Government agreed not to identify Apicelli as the person in the surveillance video and backtracked on this promise in its closing argument. We, however, see no inconsistency in the Government's position. The Government stated that it would not argue that anyone specifically identified Apicelli in the surveillance video -- instead, it would identify Apicelli as the person in the video based on the backpack and shorts found in his residence. This latter argument was exactly what the Government focused on in its closing. Because Bain's out-of-court identification of Apicelli

---

[12] On appeal, Apicelli portrays Payer's statements as impermissible overview testimony, perhaps as a vehicle to argue that the testimony resulted in the type of extreme prejudice warranting a mistrial. Overview testimony occurs when "a government witness testifies about the results of a criminal investigation, usually including aspects of the investigation the witness did not participate in, before the government has presented supporting evidence." United States v. Rosado-Pérez, 605 F.3d 48, 55 (1st Cir. 2010). Payer, however, was testifying about an investigation he undertook. An officer's testimony describing his or her own investigation does not create the same concerns as overview testimony. See United States v. Hall, 434 F.3d 42, 57 (1st Cir. 2006). Additionally, Apicelli's objection characterizes Payer's testimony as hearsay, but we doubt this is so because Payer never stated in court what Apicelli feared the jury would infer -- that Bain identified Apicelli from the video.

in the surveillance video only came up once in trial, we view the district court's prompt curative instruction as sufficient.

## B. Bad Act Evidence

Apicelli also contends that he was irreparably prejudiced by bad act testimony made by another officer, Nicholas Blodgett. Blodgett stated that he found "[m]arijuana growing, marijuana drying, packaged marijuana, from my training and experience what appeared to be marijuana edibles, [and] what we believe to be a mushroom grow at one point" inside the house. Apicelli moved for a mistrial immediately after the remark arguing that Blodgett had testified about bad act evidence prohibited by Federal Rule of Evidence 404(b).[13] The district court judge denied the motion and stated he would instruct the jury to disregard Blodgett's testimony. Apicelli then argued this instruction was inadequate and asked the district court to also tell the jury that Blodgett's testimony was improper. The district court declined to do so and told the jury to "disregard the testimony concerning the mushroom grow" and that it was "irrelevant" to Apicelli's case.

We fail to see how Apicelli suffered prejudice, let alone extreme prejudice, from Blodgett's remark. Again, the district

---

[13] Federal Rule of Evidence 404(b)(1) prohibits the use of "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

court acted near-instantaneously in issuing a curative instruction. Apicelli cites no case law supporting his proposed instruction that Blodgett did something improper. We also note that Apicelli's main argument (both at trial and on appeal) is that the items found in 201 Mason Road and the marijuana found in the woods belonged to someone else. The fact that another contraband item was found inside 201 Mason Road would not have influenced the jury's determination of whether Apicelli was the only person who lived there. We therefore affirm the district court's denial of Apicelli's motion for a mistrial.

## VI. <u>Conclusion</u>

For the foregoing reasons, we affirm.

**<u>Affirmed</u>**.