# United States Court of Appeals
## For the First Circuit

No. 05-1990

UNITED STATES OF AMERICA,

Appellee,

v.

CARLOS DIAZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Lynch, Circuit Judge,

Stahl, Senior Circuit Judge,

and Howard, Circuit Judge.

Leslie W. O'Brien for appellant.
Andrew E. Lelling, Assistant United States Attorney, with
whom Michael J. Sullivan, United States Attorney, was on brief,
for appellee.

July 19, 2007

**HOWARD**, **Circuit Judge**.  Carlos Diaz appeals his conviction on charges of possessing and conspiring to distribute the controlled drug ecstasy.  Diaz claims that (1) the district court should have suppressed evidence gleaned from the warrantless seizure of his cell phone, and (2) unexpected testimony by a government witness that Diaz had illegally entered the United States necessitated a mistrial.  We affirm.

## I.

Just after midnight on October 16, 2001, three agents of the Drug Enforcement Agency, accompanied by uniformed officers from the local police department, arrived at an apartment in Lynn, Massachusetts.  The officers were led there by Ellis Martinez, who had been arrested earlier that night for selling five hundred ecstasy tablets to an undercover DEA agent, Todd Prough.  Martinez said he had acquired the tablets at the apartment that day from a man known to him as "Memello."  Martinez further recounted that he had not paid Memello for the ecstasy, but had received it "on consignment," meaning that he was expected to sell it and repay Memello out of the proceeds that same night.  Martinez also provided Prough with a brief physical description of both Memello and his vehicle, a gold Honda.

During Martinez's interrogation, his cell phone continually rang, displaying a number he had previously identified as Memello's.  Eventually, Prough and the other officers conducting

the interrogation instructed Martinez to answer one of Memello's calls, which Prough monitored and recorded. In this call, Martinez claimed to have the money to repay Memello, and promised to deliver it to him shortly. Prough, joined by other law enforcement personnel, then proceeded to Memello's apartment to arrest him. Prough later explained that he did not seek an arrest warrant due to the difficulty of contacting a magistrate at the late hour and out of a concern that the attendant delay would arouse Memello's suspicions as to Martinez's whereabouts, causing Memello to destroy evidence or to flee.

The officers approached the apartment, located on the second-floor of a multifamily house, by way of a back staircase. A gold Honda was parked outside. The officers' badges were visible, but their weapons were not drawn. One of the local officers knocked on the door. When a woman opened it, the officer identified his group as the police and asked to come in and talk to her. The woman, later identified as Diaz's wife, Amanda Burgos, responded by moving away from the door and gesturing to the officers to enter.

Once inside the apartment, Prough observed a man sitting in the kitchen and asked him for his name. The man identified himself as Carlos Diaz. Prough recognized him as Memello from his appearance, which fit the description provided by Martinez, and his

voice, which Prough had heard while listening to their cell phone conversation.  Diaz was arrested and removed from the apartment.

Prough then asked Burgos whether the apartment contained any weapons or drugs; she said no.  He asked her for permission to search the apartment; she said yes.  While another officer was leaving the apartment to obtain a form for Burgos to sign to consent to the search, Prough noticed a cell phone on the coffee table in front of her.  Burgos indicated, in response to an inquiry from Prough, that the phone belonged to her husband, Diaz.  Prough determined that the phone was the same one that had been used to place the call to Martinez earlier that evening.[1]  Prough then seized the phone.  After Burgos signed the consent form, another DEA agent, Michael O'Shaughnessy, examined the phone and determined that it had been used to place a call to Martinez minutes before the authorities arrived at the apartment that night.

Diaz was transported to the police station in Woburn, Massachusetts, where he was advised of and waived his <u>Miranda</u> rights.  When Prough told Diaz that he had been arrested for trafficking in ecstasy, Diaz remarked, "What a mess I got myself into.  You got me for being a fool."  He proceeded to explain that

[1]Prough could not recall whether he made this determination by using Diaz's phone to call his own phone (so that Diaz's number would appear through his caller identification feature), by using his phone to call Diaz's number (so that the phone would ring), or by activating a function on the phone itself that caused it to display its number.

he had entered the United States illegally some fifteen years prior. Under further interrogation from Prough, Diaz admitted that he served as a middleman between buyers and sellers of ecstasy, funneling approximately 1,000 tablets each week to Martinez and his principal, Tomas Cubilette. Diaz further confessed to providing Martinez with the five hundred ecstasy tablets he had sold to Prough that day. Diaz's confession was not video- or tape-recorded, however, and he was never asked to put it in writing.

Before trial, Diaz moved to suppress the evidence seized from the apartment and his confession as the fruits of an illegal warrantless entry and arrest. The district court denied the motion in a written memorandum and order issued after an evidentiary hearing. The court ruled that (1) Burgos voluntarily gave her consent to the officers' entry into the apartment, (2) the officers had probable cause to arrest Diaz on sight, and (3) the cell phone was lawfully seized under the "plain view" exception, see Horton v. California, 496 U.S. 128, 136-37 (1990).[2]

At trial, Prough served as the government's principal witness against Diaz, relating the substance of his confession as well as the aforementioned events of the night of October 15. The government also submitted toll records showing multiple calls

---

[2]The district court also made the alternative rulings that (1) exigent circumstances permitted the warrantless entry, and (2) the seizure of the cell phone was within the scope of the consent Burgos had given to search the apartment. For reasons that will appear, we need not pass upon those rulings.

between Martinez's cell phone and Diaz's cell phone prior to Diaz's arrest that night, and similar activity on a number of previous occasions when Prough had purchased, or attempted to purchase, ecstasy from Martinez.  Diaz's cell phone was also introduced into evidence, accompanied by testimony from O'Shaughnessy as to the call from the phone to Martinez just before the authorities arrived at Diaz's apartment.

In describing Diaz's confession, Prough testified that Diaz had admitted to entering the United States illegally.  Diaz immediately made an objection, which the district court sustained.[3] At the end of that day of trial, Diaz moved for a mistrial on the basis of this testimony, which he characterized as irrelevant and prejudicial.  Though the government opposed the motion, it took "full responsibility" for Prough's testimony: the prosecutor acknowledged that he could not recall whether he had instructed Prough not to mention Diaz's immigration status, despite assuring defense counsel before trial that he would do so.[4]

---

[3]Diaz did not move to strike the testimony because, as defense counsel later explained, he did not want to call the jury's attention to it.

[4]Diaz does not argue that the prosecutor's handling of the situation amounted to intentional misconduct, e.g., that the prosecutor knowingly failed to tell Prough not to mention the subject in hopes that he would. Cf. United States v. Sepulveda, 15 F.3d 1161, 1185 (1st Cir. 1993) (considering claim that government violated due process by purposely calling incompetent witness).

The district court denied the motion, concluding that the testimony would not "materially affect" the outcome of the trial, but offered to instruct the jury to disregard it. Diaz, however, did not take the court up on its offer, believing that an instruction would only highlight Prough's statement. The jury convicted Diaz on both the possession and conspiracy charges.

**II.**

**A.**

Diaz appeals from the denial of his motion to suppress his cell phone as the spoils of an unconstitutional warrantless entry and seizure. He does not, however, separately question the district court's conclusion that the officers had probable cause to arrest him and that his confession was therefore legally obtained. In passing on a district court's decision on a motion to suppress, we scrutinize rulings of law de novo, but review findings of fact for clear error only. E.g., United States v. McCarthy, 475 F.3d 39, 43 (1st Cir. 2007).

The Fourth Amendment "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." Payton v. New York, 445 U.S. 573, 576 (1980). Nevertheless, "[t]he Fourth Amendment recognizes a valid warrantless entry . . . when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who

later objects to the use of evidence so obtained." Georgia v. Randolph, 126 S.Ct. 1515, 1518 (2006). When faced with such an objection, the government has the burden to show by a preponderance of the evidence that the consent was voluntarily given. United States v. Marshall, 348 F.3d 281, 285-86 (1st Cir. 2003).

The district court found that Diaz's wife, Burgos, had voluntarily consented to the arresting officers' entry into the apartment. Diaz does not challenge this result per se. Instead, he contends that the district court erroneously placed the burden on him to prove that Burgos did not consent. He bases this charge on a statement in the court's order on the motion to suppress:

> The problem in this case is that only one version of what happened at the threshold of the door to the Burgos-Diaz apartment was presented to me--that of [Special Agent] Prough. Burgos did not testify. And while parts of the Prough testimony troubled me, I have no basis to conclude that Burgos' consent was not 'freely given' within the meaning of the law.

We do not read this statement as placing the burden of proving voluntary consent on Diaz. Rather, the passage expresses the court's conclusion that Prough's testimony, despite its faults, sufficed to satisfy the government's burden in the absence of any contradictory evidence. We read the statement, in other words, as reflecting Diaz's failure to challenge the government's proof of voluntary consent, not condemning his failure to prove otherwise in the first instance.

Indeed, elsewhere in its order, the district court specifically noted that the warrantless entry "was presumptively illegal unless the government can justify exceptions to the Payton rule" and that the law "obligates the government to prove that consent was, in fact, freely and voluntarily given." (internal quotation marks omitted). We are generally skeptical of claims that a district court professed to apply one rule, but went on to apply another; "[a]fter all, an appellate tribunal ought not lightly assume that a federal trial judge is indulging in the adjudicatory equivalent of a shell game." Lenn v. Portland Sch. Comm., 998 F.2d 1083, 1088 (1st Cir. 1993) (collecting cases). We see no reason to dispense with such skepticism here. We conclude that the district court, in word and in deed, correctly placed the burden of proving voluntary consent on the government.

Diaz also claims that, even if the district court properly found that Burgos validly consented to the officers' warrantless entry, she did not validly consent to their warrantless search and seizure. Specifically, Diaz argues that Burgos lacked the authority to consent to either the search of the apartment or the seizure of the cell phone. We need not reach this issue, however. In addition to finding that Burgos did consent to such a search, the district court ruled that the cell phone was legally seized under the "plain view" exception to the warrant requirement. This conclusion appears sound, but, in any event, Diaz does not

question it on appeal.[5]  We affirm the district court's denial of the motion to suppress, insofar as it challenged the seizure of the cell phone, on the basis of the "plain view" exception.

**B.**

Diaz also challenges the denial of his motion for a mistrial based on Prough's testimony that Diaz had admitted entering the United States illegally.  Because "whether to declare a mistrial speaks to the informed discretion of the district court," we review this decision for abuse of that discretion only. United States v. Keene, 287 F.3d 229, 233 (1st Cir. 2002).  Indeed, "this precept possesses particular force when, as now, a motion for mistrial is based on a claim that some spontaneous development at trial may have influenced the jury in an improper manner." United States v. Pierro, 32 F.3d 611, 617 (1st Cir. 1994).

---

[5]To the extent that he argues that the cellular telephone's assigned number was illegally obtained apart from the seizure of the telephone, Diaz did not raise this claim in a timely and full fashion before the district court; review is thus for plain error only.  See, e.g., United States v. Burnette, 375 F.3d 10, 16 (1st Cir. 2004) (reviewing suppression argument not raised below for plain error only), vacated on other grounds, 543 U.S. 1181 (2005). As we have noted, it is unclear whether the method by which the information was gleaned constituted a search.  In any event, as the government argues unchallenged, probable cause existed to search for the telephone number, and it inevitably would have been discovered, either in plain view or by search conducted pursuant to a warrant.  There was no plain error in not suppressing the assigned telephone number.  See, e.g., United States v. Procopio, 88 F.3d 21, 27 (1st Cir. 1996) (holding that evidence is admissible if shown by preponderance that it inevitably would have been discovered by legal means).

-10-

We accept the notion, as does the government, that evidence of a defendant's illegal immigration status carries with it the potential for prejudice. See United States v. Amaya-Manzanares, 377 F.3d 39, 45 (1st Cir. 2004). We agree with the district court, however, that such potential went unrealized here.

First, the government's case against Diaz was sturdy, with his full confession serving as its keystone. While Diaz points out that the confession was not transcribed, whatever doubt this casts on its value was substantially dispelled by a raft of corroborating evidence, including the toll records of calls to Martinez corresponding with the occasions on which he had sold ecstasy to Prough. See, e.g., United States v. Fontanez, 291 F.3d 88, 89 (1st Cir. 2002). We have observed that such strong independent evidence of guilt tends to lessen the effect of an improper comment by a witness, making a mistrial unnecessary. See United States v. DiSanto, 86 F.3d 1238, 1249 (1st Cir. 1996); United States v. Rullan-Rivera, 60 F.3d 16, 18 (1st Cir. 1995); United States v. Bello-Perez, 977 F.2d 664, 672 (1st Cir. 1992).

Second, after Prough stated that Diaz had admitted entering the country illegally, that fact was never mentioned again, either in the balance of Prough's lengthy testimony or in the prosecutor's closing arguments. The isolated nature of the offending remark further cuts against any need for a mistrial. See United States v. Lee, 317 F.3d 26, 34-35 (1st Cir. 2003).

"Declaring a mistrial is a last resort, only to be implemented if the taint is ineradicable, that is, only if the trial judge believes that the jury's exposure to the evidence is likely to prove beyond realistic hope of repair."  <u>Sepulveda</u>, 15 F.3d at 1184.  Here, the district court reasonably believed otherwise, based on the fleeting nature of Prough's remark about Diaz's immigration status and the strength of the government's independent evidence.  Denying the motion for a mistrial, then, was not an abuse of the district court's discretion.

## III.

For the foregoing reasons, Diaz's conviction is **<u>affirmed</u>**.