# United States Court of Appeals
## For the First Circuit

No. 16-1806

UNITED STATES OF AMERICA,

Appellee,

v.

JEAN TONY VALBRUN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Jon D. Levy, U.S. District Judge]

Before

Barron, Selya and Stahl,
Circuit Judges.

Leslie Feldman-Rumpler on brief for appellant.
Richard W. Murphy, Acting United States Attorney, and Renée
M. Bunker, Assistant United States Attorney, Appellate Chief, on
brief for appellee.

December 15, 2017

**SELYA**, **Circuit Judge**. Following his conviction for a drug-trafficking offense, defendant-appellant Jean Tony Valbrun assigns error to certain of the district court's evidentiary rulings and to a jury instruction. Finding his asseverational array unpersuasive, we affirm his conviction.

## I. BACKGROUND

This case is one of several arising out of the activities of a sprawling drug-distribution ring operating in Maine. As such, it implicates one of many spokes radiating from the hub of a conspiratorial wheel. We briefly rehearse the relevant facts and travel of the case, directing readers who hunger for more exegetic details about the drug-distribution ring to consult our opinion in United States v. Gordon, 871 F.3d 35, 40-42 (1st Cir. 2017).

In 2014, Joey Brown, an agent of the Drug Enforcement Administration (DEA), led an investigation into the activities of Jacques Victor, the suspected kingpin of a drug-distribution ring. During this investigation, the DEA received judicial authorization to intercept calls and text messages to and from a number of telephones, including Victor's cellphone. See id. at 41-42; see also 18 U.S.C. §§ 2510-2522. Through these intercepts, the DEA learned that Victor was plotting with Alcindy Jean-Baptiste, Jonathan Duffaud, and the appellant to obtain drugs in Massachusetts and transport them to Maine.

When the plot matured, the authorities were ready: the appellant was arrested while driving a rental vehicle en route from Massachusetts to Maine. Concealed within the vehicle were 225 net grams of heroin and 106.2 net grams of cocaine base (crack cocaine).

In due course, the appellant and eleven other persons were indicted on charges associated with the activities of the drug ring. The appellant was, however, tried separately, on charges of knowingly possessing with intent to distribute heroin and crack cocaine, see 21 U.S.C. § 841(a)(1), and of aiding and abetting the same, see 18 U.S.C. § 2(a). At trial, the government introduced thirteen recorded calls derived from the wiretap on Victor's cellphone. Victor (who had participated in each of the thirteen calls) testified about these conversations, identifying specific voices and explaining jargon and other phrases of uncertain meaning. The appellant's principal defense was that he did not know that the rental vehicle contained controlled substances.

At the conclusion of the trial, the district court instructed the jury on, inter alia, the doctrine of willful blindness. The jury found the appellant guilty as charged. The court subsequently sentenced him to an incarcerative term of twenty-eight months. This timely appeal ensued.

## II. ANALYSIS

The appellant assigns error in two respects. First, he contends that the district court erred in allowing parts of Victor's testimony about the intercepted calls. Second, he contends that the court erred in instructing the jury on willful blindness. We address these contentions sequentially.

### A. The Challenged Testimony.

As an initial matter, the appellant trains his fire on the district court's admission of Victor's testimony interpreting parts of the telephone conversations. In support, he argues that most of the language was clear and that Victor's interpretive gloss was neither necessary nor helpful to an understanding of the evidence. The challenged testimony falls into two categories: in the appellant's words, one category consisted of testimony comprising "repetitions or explanations . . . juxtaposed with testimony as to . . . Victor's own knowledge of facts"; the second category consisted of testimony that "materially changed the meaning of statements." Although the appellant attempts to paint with a broad brush, he only articulates specific challenges to testimony regarding three calls. We limit our inquiry accordingly. See United States v. Albertelli, 687 F.3d 439, 448-49 (1st Cir. 2012).

A threshold problem looms: the appellant's challenges implicate Federal Rule of Evidence 701, and the government disputes

whether the appellant adequately preserved these objections below. We find it unnecessary to resolve this dispute; rather, we assume, favorably to the appellant, that his objections were preserved. Consequently, our review is for abuse of discretion. See United States v. Gobbi, 471 F.3d 302, 311 (1st Cir. 2006) (holding that disputed rulings relating to admission or exclusion of evidence, if preserved, are reviewed for abuse of discretion).

The appellant's interpretive testimony is fairly characterized as lay opinion testimony. See, e.g., United States v. Dunston, 851 F.3d 91, 96 (1st Cir. 2017); United States v. Santiago, 560 F.3d 62, 66 (1st Cir. 2009). Rule 701 permits the admission of lay opinion testimony that is "rationally based on the witness's perception," helps the factfinder to understand "the witness's testimony or to determin[e] a fact in issue," and does not depend "on scientific, technical, or other specialized knowledge within the scope of Rule 702." The district court has "considerable discretion" in deciding whether to admit lay opinion testimony under Rule 701. United States v. Valdivia, 680 F.3d 33, 51 (1st Cir. 2012). Even so, the rule requires exclusion "where the witness is no better suited than the jury to make the judgment at issue," thus "providing assurance against the admission of opinions which would merely tell the jury what result to reach." United States v. Vázquez-Rivera, 665 F.3d 351, 363 (1st Cir. 2011) (quoting United States v. Meises, 645 F.3d 5, 16 (1st Cir. 2011)).

Here, Victor's interpretations are rationally based on his experience and his first-hand perceptions and do not involve "scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. The question, then, is whether the district court abused its discretion in determining that those interpretations would help the jury to understand what was being communicated in the calls. In answering this question, we do not write on a pristine page: it is settled beyond hope of contradiction that a witness with personal knowledge of slang or jargon commonly employed in the drug trade may, consistent with Rule 701, be allowed to interpret ambiguous language used conversationally by drug traffickers. See Dunston, 851 F.3d at 96; United States v. Lizardo, 445 F.3d 73, 83 (1st Cir. 2006). It follows that a knowledgeable coconspirator may be permitted to offer lay opinion testimony in a drug-trafficking prosecution "as to the meanings of 'code words' used by fellow conspirators in taped conversations" in which he participated. Lizardo, 445 F.3d at 83 (quoting United States v. Gaines, 170 F.3d 72, 77 (1st Cir. 1999)).

In this instance, though, the appellant insists that the language in most of the intercepted calls was clear and that Victor's testimony was of no help in understanding the dialogue. The district court reached a different conclusion, and our review of the record convinces us that the court's conclusion was well within the compass of its discretion. The calls contained a host

of ambiguities, and Victor's testimony served not only to clarify those ambiguities but also to provide needed context to the events that were transpiring.  For example, the participants in the calls referred to individuals involved in the drug ring's activities informally, and Victor was helpful to the jury in identifying the persons to whom sobriquets such as "Dude" and "Face" referred. See, e.g., United States v. Spencer, 873 F.3d 1, 14 (1st Cir. 2017).

We add, moreover, that the participants in the calls used ambiguous terms to discuss what the government argues were references to the drugs found in the car and money the appellant would receive for transporting the drugs.  For example, calls between Victor and the appellant contained vague references to "putting the thing," "my stuff," and "hid[ing] it well."  Nor does it seem to have been mere happenstance: Victor testified that he often tried to "conceal [his] transaction[s]" by not explicitly mentioning drugs.  Seen in this light, it is nose-on-the-face plain that Victor's testimony was likely to assist the jury in understanding what was meant both by the statements he made and by the statements he overheard.  Given Victor's personal knowledge of the vernacular favored by the conspirators,[1] we conclude that the

---

[1] We add that the members of the drug ring regularly used Haitian Creole dialect when speaking on the intercepted calls. See Gordon, 871 F.3d at 48-49.  This is significant because "recorded conversations in foreign languages present unique issues

district court did not abuse its discretion in finding that his testimony was helpful to the jury.

The appellant also asserts that exclusion of portions of the challenged testimony was mandated because Victor misled the jury by materially changing the meaning of recorded statements. Properly viewed, this assertion goes to the weight of Victor's testimony, not to its admissibility. See Robinson v. Watts Detec. Agency, Inc., 685 F.2d 729, 739 (1st Cir. 1982) (explaining that whether an "opinion is accurate goes to the weight of the testimony, not its admissibility"); cf. United States v. Vega-Figueroa, 234 F.3d 744, 755 (1st Cir. 2000) ("[T]he modern trend favors the admission of opinion testimony provided it is well founded on personal knowledge and susceptible to cross-examination."). Once the court has determined that lay opinion testimony will be helpful to the jury and satisfies the other prerequisites of Rule 701, it is for the jury to assay the persuasive force of that testimony. See Albertelli, 687 F.3d at 448; United States v. Paiva, 892 F.2d 148, 157 (1st Cir. 1989).

To be sure, evidence may be excluded "if its probative value is substantially outweighed" by the danger of "misleading

---

for juries," who may struggle to grasp the meanings of relevant speech idiosyncrasies or idioms. United States v. Mendiola, 707 F.3d 735, 742 (7th Cir. 2013). Because Victor was fluent in Haitian Creole, his testimony was especially valuable in clarifying his coconspirators' often cryptic statements.

the jury." Fed. R. Evid. 403. Here, however, the appellant failed to invoke Rule 403 either at trial or in his appellate briefing. Consequently, any claim of error that hinges on the application of this Rule would, at best, be reviewed for plain error. See United States v. Gordon, 875 F.3d 26, 30 (1st Cir. 2017) (holding that party's failure to specify ground of objection in district court results in plain error review); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (holding that "issues adverted to in a perfunctory manner" in appellate briefs "are deemed waived"); see also Fed. R. Evid. 103(a)(1)(B). There was no Rule 403 error here, plain or otherwise.

When Rule 403 is in play, the devoir of persuasion rests with the party urging exclusion. See United States v. Tse, 375 F.3d 148, 164 (1st Cir. 2004). The appellant has not carried this burden: his attempts to portray Victor's testimony as misleading are largely conclusory. The record makes manifest that Victor offered his interpretations of certain statements based on personal knowledge, and the appellant had a full and fair opportunity to cross-examine him. No more is exigible when — as in this case — the appellant has not developed any sufficient argument indicating that the risks inherent in admitting Victor's testimony substantially outweighed its probative value.

To say more about the challenged testimony would be pointless. We hold, without serious question, that the district

court did not abuse its "considerable discretion," <u>Valdivia</u>, 680 F.3d at 51, in allowing Victor to offer lay opinion testimony about the meaning and purport of intercepted conversations in which he had participated.

## B.   <u>The Challenged Instruction.</u>

This brings us to the appellant's claim that the district court's willful blindness instruction was unwarranted. Our case law is inconsistent concerning the standard of review that applies where, as here, a defendant challenges the sufficiency of the evidence undergirding a willful blindness instruction. While older cases have reviewed for abuse of discretion, <u>see</u>, <u>e.g.</u>, <u>United States</u> v. <u>Coviello</u>, 225 F.3d 54, 70 (1st Cir. 2000), more recent cases have undertaken de novo review, <u>see</u>, <u>e.g.</u>, <u>United States</u> v. <u>Parker</u>, 872 F.3d 1, 14 (1st Cir. 2017). In the case at hand, this issue is further complicated by the government's suggestion that the appellant has not preserved this claim of error. <u>See</u> Fed. R. Crim. P. 30(d); <u>see</u> <u>also</u> <u>United States</u> v. <u>Moran</u>, 393 F.3d 1, 13 (1st Cir. 2004) (explaining that unpreserved claims of instructional error are reviewed for plain error).

We need not unwind this procedural tangle. Given the impeccable provenance of the challenged instruction, we simply assume, favorably to the appellant, both that the claim of error was duly preserved and that it engenders de novo review. Even on such a generous set of assumptions, the claim is hopeless.

The doctrine of willful blindness permits the government to prove scienter when a defendant deliberately shields himself from apparent evidence of criminality. See Global-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 766 (2011). In effect, the law treats "persons who know enough to blind themselves to direct proof of critical facts" as having "actual knowledge of those facts." Id.; see United States v. Singh, 222 F.3d 6, 11 (1st Cir. 2000). A willful blindness instruction is justified if "(1) a defendant claims a lack of knowledge, (2) the facts suggest a conscious course of deliberate ignorance, and (3) the instruction, taken as a whole, cannot be misunderstood as mandating an inference of knowledge." United States v. Azubike, 564 F.3d 59, 66 (1st Cir. 2009); see Singh, 222 F.3d at 11. In mounting his claim of instructional error, the appellant dwells on the second of these elements, insisting that the evidence of purposeful avoidance was insufficient to ground the instruction. We do not agree.

To begin, the government is not required to prove willful blindness by direct evidence. See Singh, 222 F.3d at 11. Instead, it may satisfy its burden of production by adducing evidence that red flags existed that the defendant consciously avoided

- 11 -

investigating.[2]  See United States v. Ford, 821 F.3d 63, 74 (1st Cir. 2016); Singh, 222 F.3d at 11.  We have held that such circumstantial evidence is "sufficient to permit a factfinder to infer conscious avoidance of guilty knowledge" and, thus, to justify a willful blindness instruction.  Singh, 222 F.3d at 11.

In this case, warning signs abounded.  For instance, the appellant was a party to a call during which (as Victor testified) Victor and Duffaud discussed the rental vehicle's air filter housing system as a potential place to hide drugs.  During the same call, Victor told the appellant, "[s]ince you're a mechanic call me when dude is putting the thing," and the appellant replied, "Aight."[3]

So, too, in a subsequent call, the appellant told Victor, "Dude is down the street, coming.  Get it . . . get on the highway; . . . ninety five."  Victor responded: "Aight . . . If you can, look for a good place in the car to hide it well for me.  Look under, if you can search under . . . If you can, go under physical yourself," to which the appellant replied, "[y]eah, imma put . . . ."  From these and other discussions explicated by Victor, the jury reasonably could have inferred that the appellant either knew

[2] In determining whether the government has satisfied its burden of production, we take the facts in the light most favorable to it.  See Singh, 222 F.3d at 11.

[3] Taken in context, the word "Aight" appears to be a contraction of "all right," and the parties' briefs assume as much.

- 12 -

of an effort to hide drugs in the rental vehicle and was cooperating in that endeavor or he purposefully avoided looking into the meaning of what the statements portended. The latter inference was sufficient to ground a willful blindness instruction. See Singh, 222 F.3d at 11; United States v. Cunan, 152 F.3d 29, 39 (1st Cir. 1998). Indeed, we previously have upheld the use of a willful blindness instruction in a drug-distribution case where a defendant responds affirmatively to jargon on an intercepted call and makes no inquiry into its meaning. See Azubike, 564 F.3d at 68. Such a ruling does no more than reflect the reality of events: "drug organizations do not usually take unnecessary risks by trusting critical transactions to outsiders." Id. at 65 (internal quotation marks omitted).

In an attempt to derail this reasoning, the appellant invokes our decision in United States v. Pérez-Meléndez, 599 F.3d 31 (1st Cir. 2010). There, we ruled that the evidence undergirding the jury verdict was too thin. See id. at 46-47. This ruling stemmed from our conclusion that the government had established no more than that the defendants "knew or were willfully blind to the fact that something illegal was afoot," not that a controlled substance was involved. Id. at 45.

The case before us is readily distinguishable from Pérez-Meléndez. In that case, the record contained "no evidence" that the defendants had "resisted" learning the true nature of the

contraband that they were transporting. Id. at 46. To the contrary, they had been hired by a legitimate shipping company for an ostensibly legal purpose — the transportation of reams of paper — and the government's case of scienter relied almost entirely on the fact that the defendants had given inconsistent statements to the police. No red flags existed that might have alerted the defendants to the fact that they were transporting narcotics (as opposed to other types of contraband).

By contrast, the present record contains ample evidence, including Victor's testimony regarding the contents of the intercepted calls, from which a jury reasonably could find — as this jury did — that the appellant knew that a drug deal was in the offing. Moreover, the jury reasonably could have found that the appellant either knowingly participated in the transportation of the drugs or deliberately closed his eyes to the obvious fact that he was transporting drugs.[4]

## III. CONCLUSION

We need go no further. For the reasons elucidated above, the judgment is

**Affirmed.**

---

[4] The fact that the drugs were concealed in the trunk liner of the rental vehicle driven by the appellant does not alter this conclusion. After all, the jury, crediting the appellant's statements during the intercepted calls and Victor's testimony, reasonably could have inferred that the appellant either knew that the drugs had been hidden there or purposefully avoided such knowledge.