# United States Court of Appeals
## For the First Circuit

No. 20-1708

UNITED STATES OF AMERICA,

Appellee,

v.

ERIC SANTIAGO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Barron, Chief Judge,
Selya and Lipez, Circuit Judges.

Jean C. LaRocque, with whom Shea and LaRocque, LLP was on brief, for appellant.
Karen L. Eisenstadt, Assistant United States Attorney, with whom Rachael S. Rollins, United States Attorney, was on brief, for appellee.

March 20, 2023

**BARRON**, **Chief Judge**.  Eric Santiago appeals his 2020 conviction in the United States District Court for the District of Massachusetts for violating 21 U.S.C. § 841 by "distribut[ing]" or "possess[ing] with intent to . . . distribute" fentanyl.  He claims that his conviction must be reversed because the evidence presented at trial did not suffice to support it and that, in the alternative, it must be vacated due to various trial errors.  We affirm.

## I.

The operative indictment charges Santiago with a single count of distributing and possessing with intent to distribute 400 grams or more of fentanyl in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(vi).  The charge arises from Santiago's alleged role in dropping off a package of fentanyl at the home of Rafael Reyes -- a cooperating witness working with federal agents who were investigating drug-distribution networks in Boston -- and later accepting payment from Reyes for that package.  The jury found Santiago guilty following a four-day trial, and separately found that Santiago had been previously convicted of an offense that qualified as a "serious drug felony" under 21 U.S.C. § 841(b)(1)(A).

Reyes was the key government witness at the trial.  He testified that on June 16, 2018, Santiago visited Reyes's home when Reyes was not there, then when Reyes returned, told Reyes

that he had some fentanyl for him, walked with Reyes into Reyes's garage, and showed Reyes a package of fentanyl placed near Reyes's car. Reyes then testified that Santiago told him to take the package inside and unwrap it, which Reyes did (saving some wrapping for federal agents to check for fingerprints). Reyes also testified that, while he did not pay Santiago for the fentanyl that day, the two had discussed a price of $70 per gram for the approximately 500 grams, or $35,000.

Reyes, as well as federal agents working with him on the investigation, testified that after Santiago left, the agents instructed Reyes to deliver the package and wrapping to a police officer working on the investigation. A fingerprint specialist then examined the package and found one fingerprint, but it did not match either Santiago or Reyes, and remained unidentified. The agents also instructed Reyes to text Santiago to negotiate payment for the fentanyl. For the following two weeks, Reyes and Santiago exchanged numerous text messages referring to a "motorbike," which Reyes testified was a coded conversation about the price of the fentanyl and when Reyes had to pay.

Reyes then testified that on June 21, federal agents instructed him to drive to Santiago's home in Lynn, Massachusetts, and make a controlled payment of $5,000, which he did. He also testified that agents instructed him to negotiate the purchase of more fentanyl from Santiago, after which Reyes and Santiago

exchanged text messages about a "scooter," which Reyes testified referred to fentanyl. One week after that, on June 28, Reyes texted Santiago asking to meet in New Bedford, Massachusetts, to deliver the "titles," which Reyes testified referred to the remaining $30,000 due for the fentanyl left at his home. When Santiago arrived, Reyes handed him a bag of money, after which Santiago drove away. A short time later, agents stopped Santiago's vehicle and arrested him.

Santiago was convicted and sentenced to 180 months of imprisonment and ten years of supervised release. He then filed this timely appeal.

**II.**

We begin with Santiago's contention that his conviction must be reversed because it is not supported by sufficient evidence. Our review is de novo, though we must consider the evidence in the light most favorable to the verdict. See United States v. Charriez-Rolón, 923 F.3d 45, 51 (1st Cir. 2019).

Before diving into the analysis, it helps to clear some ground about what the government was required to prove in light of the underlying charge as set forth in the indictment. That charge was set forth in a single count for "distribut[ing]" fentanyl in violation of 21 U.S.C. § 841 or "possess[ing] with intent to distribute" fentanyl in violation of that same statute.

- 4 -

As Santiago asserts in connection with a challenge he brings to the District Court's jury instructions, "distribution" and "possession with intent to distribute" under § 841 can be two distinct crimes, as the offense of "distribution" does not require the element of possession, United States v. Cortés-Cabán, 691 F.3d 1, 19 (1st Cir. 2012); see also United States v. Tejada, 886 F.2d 483, 490 (1st Cir. 1989), while the offense of "possession with intent to distribute" does not require the element of distribution, Cortés-Cabán, 691 F.3d at 17. And because "[i]t is possible -- albeit unusual -- to be guilty of distribution of a drug without also possessing it with intent to distribute," United States v. Sepulveda, 102 F.3d 1313, 1317 (1st Cir. 1996), the offense of "possession with intent to distribute" is not a lesser-included offense of "distribution," see Tejada, 886 F.2d at 489-90 (discussing test established in Blockburger v. United States, 284 U.S. 299, 304 (1932), for determining whether two crimes may be punished as independent offenses).

Thus, we must reject Santiago's sufficiency challenge so long as the evidence suffices to permit a rational jury to find beyond a reasonable doubt that Santiago committed the offense of either distributing fentanyl or possessing fentanyl with the intent to distribute it. See Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). In contending that the evidence does not suffice to permit us to affirm his conviction for either offense, Santiago

emphasizes the lack of eye-witness testimony that he personally handled the fentanyl in question, the lack of a single mention of "fentanyl" or "drugs" in any of the phone calls or text messages that were introduced at trial, the fact that the fingerprint recovered from the package that contained the fentanyl was not his, and the implausibility of the notion that "Santiago suddenly surprised [Reyes] at his . . . home to 'front' him half a kilo of fentanyl that Reyes was not expecting without any down payment." Thus, he contends that there is no evidence in the record that could suffice to tie him to the fentanyl in question in a way that would permit his conviction based on either distributing that drug or possessing it with the intent to distribute it. See United States v. Valerio, 48 F.3d 58, 64 (1st Cir. 1995) ("[W]e are loath to stack inference upon inference in order to uphold the jury's verdict.").

"[I]t is well-settled," however, "that '[t]estimony from even just one witness can support a conviction.'" United States v. Maldonado-Peña, 4 F.4th 1, 54 (1st Cir. 2021) (second alteration in original) (quoting United States v. Negrón-Sostre, 790 F.3d 295, 307 (1st Cir 2015)), cert. denied sub nom. Rivera-Alejandro v. United States, 142 S. Ct. 729 (2021), Rivera-George v. United States, 142 S. Ct. 1184 (2022), and Rivera-Alejandro v. United States, 142 S. Ct. 1185 (2022). And, here, the government called to the stand Reyes, who testified that Santiago visited Reyes's

home, showed Reyes the package of fentanyl in the garage, stated "I put it right over there," (emphasis added), and invited Reyes to take possession of it.

Santiago does contend that Reyes was not credible. In support of this contention, he notes that the record shows that at the time of events in question Reyes had agreed to become a witness for the government in return for his release from prison and a downward departure from a ten-year sentence he otherwise expected to face.

But, "[o]ur framework for reviewing this kind of challenge means we give the government the benefit of the doubt and resolve any questions of witness credibility against the defendant." Maldonado-Peña, 4 F.4th at 54. Moreover, the government introduced evidence to corroborate Reyes's testimony in the form of the package that contained the fentanyl at issue, the text messages between Reyes and Santiago, and the two controlled payments that Santiago received from Reyes. See id. at 54-55 (holding that evidence was sufficient not only because one witness's testimony would alone be sufficient, but also because additional evidence corroborated the witness's testimony).

Thus, we conclude that Reyes's testimony provides a sufficient basis for a rational juror to find Santiago guilty of violating 21 U.S.C. § 841. That is so because the evidence suffices to show that Santiago possessed fentanyl with the intent

to distribute it (based at the least on Reyes's testimony that Santiago had stated that he had placed the package of the fentanyl in Reyes's garage) and because it also suffices to show that Santiago was engaged in distributing fentanyl (given Reyes's testimony regarding the series of events concerning the placing of that package in the garage).

## III.

We turn, then, to Santiago's contention, in the alternative, that his conviction must be vacated. Here, he relies on various claimed trial errors. As we will explain, none has merit.

## A.

Santiago first contends that the District Court erred by failing to instruct the jury that to render a guilty verdict it must be unanimous as to whether his offense was for distributing the fentanyl or possessing it with the intent to distribute it. This contention starts from the premise -- which is entirely correct -- that when an indictment charges two or more distinct offenses in a single count, it is duplicitous, and thus raises the prospect of a jury finding the defendant guilty on that count without being unanimous as to which of the two crimes set forth in that count the defendant committed. See United States v. Newell, 658 F.3d 1, 23 (1st Cir. 2011). This contention also rests on the premise -- itself entirely correct -- that a district court may

ensure this prospect does not come to pass by instructing the jury that, to convict the defendant based on the count set forth in the indictment, the jury must be unanimous in finding him guilty beyond a reasonable doubt of at least one of the offenses set forth in that charge.  See id.

In light of these premises, there is at first blush some force to Santiago's challenge.  The single count of which Santiago was convicted did combine two seemingly distinct offenses -- the offense of "distribution" and the offense of "possession with the intent to distribute" -- and so was duplicitous, thereby threatening to undermine Santiago's right to a unanimous jury. See id.  Moreover, the District Court chose not to give the curative unanimity instruction to the jury, even though Santiago requested that instruction.

Of course, the need for a curative instruction in the face of a duplicitous indictment only arises if at the time the instructions are provided there still are two possible offenses in play, such that a verdict of guilty by the jury on the charged count would not necessarily reflect a unanimous verdict of guilt as to either offense.  And, although possession with intent to distribute fentanyl is in principle a distinct offense from the crime of distributing fentanyl, these distinct offenses "merge" into a single offense when "the distribution itself is the sole evidence of possession, or where possession is shown to exist only

- 9 -

at the moment of distribution." Sepulveda, 102 F.3d at 1317 (quoting United States v. Rodriguez-Cardona, 924 F.2d 1148, 1159 (1st Cir. 1991)). Thus, the critical question here is whether, at the time the District Court declined to give the instruction on unanimity, those theoretically distinct offenses had merged into one based on what the evidence had shown.

The government contends that the answer to that question here is in the affirmative, because in this case the sole evidence that could suffice to support the conviction for "distribution" -- Reyes's testimony -- also ensured that the offense of "distribution" merged with the offense of "possession with intent to distribute." And that is so, the government argues, because Reyes's testimony was such that both "the distribution itself [was] the sole evidence of possession" and the "possession [was] shown to exist only at the moment of distribution." Id.

Santiago disputes this merger-based ground for rejecting his challenge to the District Court's failure to give the requested unanimity instruction. He points to the fact that the fingerprint recovered from the package did not match his own and that no witnesses testified to seeing him in possession of the fentanyl. He then contends, based on that feature of the record, that some jurors could have believed that an unknown "third party" physically placed the drugs in Reyes's garage. On that reading, Santiago argues that some jurors could have believed that he was involved

- 10 -

in distributing the fentanyl at issue only by showing Reyes where the package was and inviting him to take possession of it without ever having handled it, even while other jurors also found based on Reyes's testimony that Santiago himself had dropped off that package.   Santiago contends in this regard:

> If six [jurors] thought Santiago had not possessed the drugs (a likely scenario given the lack of fingerprints, no actual witness seeing possession[,] and the unbelievability of any drug dealer 'fronting' someone half a kilo of fentanyl by haphazardly dropping it off at a garage), with six thinking he had distributed drugs without possessing them, through a third party for example, it would not be a unanimous verdict . . . ."

(Emphases added).

In pressing this argument, Santiago lays out a scenario in which the jurors would have found him guilty of distribution through different findings of brute facts -- with some finding him guilty of that offense while having possessed the fentanyl and others finding him guilty of that offense without finding that at any point he possessed the fentanyl.[1]  However, Santiago has failed

---

[1] The District Court instructed the jury that "possession" includes both "actual possession" and "constructive possession," meaning "when a person who is not in physical control of the item nonetheless has both the power and the intent to exercise dominion and control over it."   See also United States v. García-Carrasquillo, 483 F.3d 124, 130 (1st Cir. 2007) ("Constructive possession exists when a person knowingly has the power and intention at a given time to exercise dominion and control over an object either directly or through others." (emphasis added) (quoting United States v. McLean, 409 F.3d 492, 501 (1st Cir. 2005))).

to lay out a theory in which, based on this record, any juror could have found him guilty of "possession with intent to distribute" but not "distribution."  And we understand why, for we similarly cannot conceive of any reading of the record that would permit a rational jury to find him guilty of the charged count without unanimously finding him guilty of at least the offense of "distribution."  Accordingly, this challenge fails because, by virtue of these two crimes having merged into a single crime in this case, the District Court had no cause to give a specific unanimity instruction, and therefore did not err in deciding not to give one.

**B.**

Santiago next contends that the District Court erred by denying his motion for a mistrial based on testimony that Agent Carl Rideout gave at trial while being cross-examined by Santiago's counsel.  The relevant exchange is as follows:

> Q: [Y]ou testified before in the grand jury, correct?  Yes?
>
> A:  Yes, yes.
>
> Q: And you were asked about the other [drug] investigations that [Reyes] was participating in, correct?
>
> A:  Yes.
>
> Q: All right. And [the prosecuting attorney] asked you, how were those going, and you said "good and bad"?

- 12 -

A: Correct.

Q: Okay, what was bad about the investigations?

A: So after the arrest of Mr. Santiago, we were looking at a bigger organization. The New Bedford and Boston organization had -- they were essentially the source to Mr. Reyes before he was arrested. . . . After the arrest of Mr. Santiago, all those platforms dropped. We think they dropped their phones and they stopped dealing with Mr. Reyes, so we didn't know the connection between Mr. Santiago and the Boston/New Bedford-based people.

Q: Let's be honest. You have no connection whatsoever to Mr. Santiago and those other individuals, correct?

A. False.

(Emphases added).

In the motion for a mistrial, Santiago contended that a portion of Rideout's testimony during this exchange implied a connection between Santiago and a broader drug organization even though the government was not planning on introducing any evidence to that effect. The motion contended that the trial had been irrevocably tainted, and that due to this unfair prejudice, a mistrial was required under the Due Process Clause of the Fifth Amendment to the United States Constitution.

We review denials of a motion for mistrial for manifest abuse of discretion. See United States v. Chisholm, 940 F.3d 119, 126 (1st Cir. 2019). In doing so, "we consider the totality of the circumstances to determine whether the defendant has demonstrated . . . clear prejudice," United States v. Trinidad-

- 13 -

Acosta, 773 F.3d 298, 306 (1st Cir. 2014) (quoting United States v. Dunbar, 553 F.3d 48, 58 (1st Cir. 2009)), while mindful that "the trial court has a superior point of vantage, and that it is only rarely -- and in extremely compelling circumstances -- that an appellate panel, informed by a cold record, will venture to reverse a trial judge's on-the-spot decision," id. (quoting United States v. Freeman, 208 F.3d 332, 339 (1st Cir. 2000)).

To carry out this review, we assess four factors: "the context of the improper remark, whether it was deliberate or accidental, the likely effect of the curative instruction, and the strength of the evidence against the appellant[]." United States v. Cresta, 825 F.2d 538, 549-50 (1st Cir. 1987).

The passages quoted above from Rideout's testimony, as well as a review of the record of the four-day trial, establish that the assertedly improper "comment was isolated." Id. at 550; see also United States v. Johnston, 784 F.2d 416, 424 (1st Cir. 1986) ("The quoted remarks were the only such comments in the course of an eight-day trial . . . . The limited extent of the comments 'makes it less likely that the minds of the jurors would be so influenced by such incidental statements . . . that they would not appraise the evidence objectively and dispassionately.'" (quoting United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 240 (1939))). Thus, the context of the comment, by showing the comment to be a "single, isolated statement" in a four-day trial, points

against a conclusion that the District Court manifestly erred here. See Trinidad-Acosta, 773 F.3d at 304, 307 (holding same in five-day trial); see also United States v. Diaz, 494 F.3d 221, 227 (1st Cir. 2007) ("[A]fter [the improper remark], that fact was never mentioned again, either in the balance of [the witness's] lengthy testimony or in the prosecutor's closing arguments. The isolated nature of the offending remark further cuts against any need for a mistrial.").

Nor was the comment from Rideout that undergirds this challenge to the conviction one that was "deliberately elicit[ed]" by the prosecution "in bad faith." Cresta, 825 F.2d at 550. Rather, it was elicited by Santiago's defense counsel through a question that he asked during his cross-examination of Rideout. See Trinidad-Acosta, 773 F.3d at 307-08 ("It is well-established that when, as here, defense counsel elicits a response from a witness, the defense cannot then 'complain of the alleged error.'" (quoting Cresta, 825 F.2d at 552)).

Santiago counters that on a pre-trial phone call, the prosecution told defense counsel that there was no connection between the first investigation and the case on trial. But, even setting aside that the prosecutor disputed the contents of the phone call and argued that none of his representations would "reasonably have assured [defense counsel] that the question he asked of . . . Rideout would have a negative answer," we agree

- 15 -

with the government that any such conversation was far from a guarantee to defense counsel that Rideout would answer the question in a particular way if Rideout were asked about it. Thus, the "deliberate or accidental" factor also weighs against Santiago's challenge, because it was defense counsel who chose to seek testimony on a matter that was not otherwise part of the prosecution's case.

The factor concerning curative instructions weighs against this challenge as well. The District Court denied the motion but instructed the jury to ignore that portion of Rideout's testimony both immediately after it was elicited and again at the end of trial. The District Court also struck that testimony from the record. The District Court thus twice gave the sort of "strong, explicit cautionary instruction to completely disregard the statement" that we have previously found "sufficient to counteract prejudice that may have flowed from [a witness's improper] remark." Cresta, 825 F.2d at 550; see also Johnston, 784 F.2d at 425 ("This explicit instruction addressing the inadmissible evidence directly was sufficient to counteract any prejudice that may have flowed from [the witness]'s testimony."). And the District Court did so "promptly," Freeman, 208 F.3d at 339 (quoting United States v. Torres, 162 F.3d 6, 12 (1st Cir. 1998)), such that the first curative instruction was the next thing the jurors heard after the improper remark and resulting sidebar.

Finally, the evidence against Santiago was strong, see Diaz, 494 F.3d at 227 ("[S]trong independent evidence of guilt tends to lessen the effect of an improper comment by a witness, making a mistrial unnecessary."), while the witness who made the improper remark was not, like Reyes, a key witness in the case. Thus, the question of prejudice did not in this case turn on whether the jury could credit that witness's testimony without being unduly swayed by the same witness's improper remark. See Cresta, 825 F.2d at 550 (concluding that "[t]he evidence against the two defendants was very strong if the jury believed [the lengthy testimony of the witness who made the improper remark]").

For these reasons, we conclude that the District Court did not manifestly abuse its discretion when it denied Santiago's motion for a mistrial.

## C.

Santiago next argues that the District Court erred by permitting Reyes to testify as a lay witness under Federal Rule of Evidence 701. That Rule provides that opinion testimony by a lay witness is admissible if it is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not

based on scientific, technical, or other specialized knowledge . . . ." Fed. R. Evid. 701.

Santiago's challenge focuses on the second prong. He argues that the meaning of the text messages between himself and Reyes "was clear" and that Reyes's testimony "was of no help in understanding the dialogue," therefore violating the requirement that the testimony be "helpful." Santiago points more specifically to Reyes's testimony that a message mentioning a "motorbike" was in fact a coded conversation about drugs.

We review a district court's admission of evidence under Federal Rule of Evidence 701 for manifest abuse of discretion. United States v. Valdivia, 680 F.3d 33, 50 (1st Cir. 2012). Applying that standard here, we discern no error.

As Santiago concedes, "it is settled beyond hope of contradiction that a witness with personal knowledge of slang or jargon commonly employed in the drug trade may, consistent with Rule 701, be allowed to interpret ambiguous language used conversationally by drug traffickers." United States v. Valbrun, 877 F.3d 440, 443 (1st Cir. 2017). It is also well-established that a participant in a conversation may give lay opinion testimony interpreting ambiguous statements in the conversation in which they participated. See United States v. George, 761 F.3d 42, 59 (1st Cir. 2014).

Santiago argues here that none of the messages that he sent to Reyes contained any ambiguities and thus that it was improper for Reyes to be permitted to testify about the meaning of the messages that he received from Santiago. For support, Santiago cites to an out-of-circuit case in which the Fourth Circuit determined that the jury did not need help to ascertain that "a hundred forty five point" meant "145 grams of heroin," because "simply pointing to the seizure of 145 grams of heroin, and then the repeated mention of '145' in this [context] clearly would have been enough for any juror to make the connection." United States v. Garcia, 752 F.3d 382, 393 (4th Cir. 2014). Santiago contends that the statements contained in the text messages that he sent to Reyes were similarly clear in conveying their meaning, such that it was not proper to permit Reyes to explain what they meant to the jury.

As an initial matter, we note that Garcia concerned the admissibility of expert witness testimony under Federal Rule of Evidence 702, and held that the agent's testimony on the meaning of "a hundred forty five point" was improper because it "substituted information gleaned from her participation in the investigation . . . for ostensible expertise," regarding calls in which the agent otherwise did not participate. 752 F.3d at 393 (emphasis added). Thus, Garcia does not address the Rule 701 issue before us here.

But, that point of precedent aside, there is a more fundamental problem with Santiago's challenge. Santiago argues that Reyes's testimony "should have been limited to explaining the typical meaning of particular words . . . rather than interpreting the meaning and import of the conversations." But, we have previously rejected exactly such an argument when an exchange contains a "host of ambiguities." Valbrun, 877 F.3d at 444. We explained in doing so that there is "no reason to require [a cooperating witness] to parse his interpretative testimony word by word as if he were a foreign language dictionary rather than an interpreter of a conversation," precisely because "the witness 'can provide needed context to the events that were transpiring.'" United States v. Obiora, 910 F.3d 555, 562 (1st Cir. 2018) (quoting Valbrun, 877 F.3d at 444).

It is fatal to this challenge, therefore, that a host of the statements in the messages from Santiago about which Reyes testified were ambiguous. Some of the statements were ambiguous in context because they arguably were using code, such as the statements referring to the sale of a "motorbike" and a "scooter." Valbrun, 877 F.3d at 444 ("[A] knowledgeable coconspirator may be permitted to offer lay opinion testimony in a drug-trafficking prosecution 'as to the meanings of "code words" used by fellow conspirators in . . . conversations' in which he participated." (quoting United States v. Lizardo, 445 F.3d 73, 83 (1st Cir.

- 20 -

2006))). Other statements were ambiguous because they used the word "it" in contexts in which the antecedent was hardly self-evident. See Lizardo, 445 F.3d at 83-84 (testimony helpful to interpret references to "this place" and "those places" in statements that otherwise "did not employ code words").

Furthermore, lay opinion testimony regarding an allegedly coded conversation is particularly appropriate when "the government la[ys] out an objective basis for the [witness's] understanding that [the defendant] knew they were speaking in coded terms and his impression of what [the defendant] actually meant." United States v. Prange, 771 F.3d 17, 28 (1st Cir. 2014). Here, the government provided such an "objective basis" not only through Reyes's own testimony that the conversation was coded and that no "motorbike" in fact existed, but also through the fact that the messages were at times incoherent if read to refer to a "motorbike," as well as the implausibility of believing that Santiago thought the conversation to be about a real "motorbike" when Reyes did not, given the vast number of text messages they exchanged and Santiago's acceptance of two large cash payments as a consequence of their negotiations in those messages.

We therefore reject Santiago's argument that the District Court erred by permitting Reyes to testify as to the meaning of the text messages that Santiago sent him.

**D.**

Santiago's remaining contention is that the District Court erred by allowing expert and non-expert testimony about the weight of the drugs that was not properly disclosed to the defense under Federal Rule of Criminal Procedure 16. This contention, too, is without merit.

**1.**

Because Santiago was charged under 21 U.S.C. § 841(b)(1)(A)(vi), which specifies a minimum drug weight of "400 grams," the weight of the fentanyl was a material element of the offense. Before trial, the prosecution disclosed to the defense in discovery that a chemist had determined that the "net weight" of the fentanyl without the packaging was "499 grams." However, this chemist had retired by the time of trial, and the chemist who would be testifying -- Vadim Astrakhan -- had only measured the "gross weight" of the drugs with the packaging (which he had determined to be 613.2 grams). At trial, the prosecution therefore asked Astrakhan to "estimate based on his training and experience . . . the weight of the packaging" and the net weight of the fentanyl.

Astrakhan testified, over defense counsel's objection, that the weight of the packaging was "about 100 grams," and that the net weight of the fentanyl was "[a]pproximately half a

- 22 -

kilogram." He later stated, however, that he was "not trained to estimate the weights."

The following morning, the government informed the District Court that Task Force Officer Kyle Montagano, who was on the government's witness list, had weighed the fentanyl the previous evening, and had determined that its net weight was 480 grams. The government also informed the District Court that it had disclosed that new evidence to the defense. Thereafter, the government called Montagano to testify, over defense counsel's objection, that the net weight of the drugs was 480 grams.

### 2.

Santiago argues that the District Court erred by not excluding Astrakhan's testimony because the basis for his expertise in "estimat[ing]" the weight of the packaging was not disclosed to the defense in violation of the "expert disclosure provisions" of Federal Rule of Criminal Procedure 16(a)(1)(G). Santiago further contends that Montagano's testimony should have been excluded because it was disclosed too late under the same rule.

We agree with the government that Santiago has waived his Rule 16 objection to Astrakhan's testimony because he made no such objection below, see United States v. Mercado, 412 F.3d 243, 247 (1st Cir. 2005), and on appeal has not attempted to satisfy his plain-error burden, see United States v. Pabon, 819 F.3d 26,

- 23 -

33 (1st Cir. 2016).[2]  In any event, we can discern no Rule 16 error because Astrakhan's testimony that the weight was "approximately half a kilogram" was fully within the scope of the "499 grams" figure disclosed to Santiago prior to trial.  See United States v. Lipscomb, 539 F.3d 32, 38 (1st Cir. 2008) ("Given that the defense had full notice of the actual opinions to which the detectives intended to testify, we are unpersuaded by the defendant's criticism [based on Rule 16] of the lack of detail regarding the bases for those opinions.").

As to Montagano's testimony, regardless of whether the timing of the government's disclosure of this evidence could be characterized as a Rule 16 violation, see Fed. R. Crim. P. 16(c) ("A party who discovers additional evidence or material before or during trial must promptly disclose its existence to the other party or the court . . . ."), Santiago has not shown how the allegedly late disclosure was prejudicial, see United States v. Melucci, 888 F.2d 200, 203 (1st Cir. 1989) ("Without a showing of prejudice[] due to the late disclosure, the relief requested cannot

---

[2] In his reply brief, Santiago recharacterizes his argument regarding Astrakhan's testimony as the one he made below relying on Federal Rule of Evidence 702: that the District Court failed in its "gatekeeping function" to evaluate whether Astrakhan's experience weighing drugs provided a sufficient basis for him to estimate the weight of the packaging.  But, "arguments available at the outset but raised for the first time in a reply brief need not be considered."  United States v. Tosi, 897 F.3d 12, 15 (1st Cir. 2018).

be granted.").  In arguing otherwise, Santiago contends that defense counsel "had no chance to prepare cross-examination for Montagano, unfairly hindering his ability to test the testimony." However, Montagano's estimate of "480 grams" was consistent with, and in fact lower than, the weight of "499 grams" already disclosed to Santiago before trial.  And Santiago does not explain how, if given more time, he might have challenged Montagano's testimony. See United States v. Bresil, 767 F.3d 124, 128 (1st Cir. 2014) ("[The defendant] makes no claim that any expert could have materially challenged (or, indeed, challenged at all) the technical claims upon which the testimony of the government's expert was based.").

We therefore conclude that Santiago is not entitled to a new trial based on these alleged errors regarding the testimony about the weight of the fentanyl.

**IV.**

For the reasons given above, the judgment of the District Court is **affirmed**.